ARLO L. JOHNSON *et al.*, Plaintiffs-Appellants, v. SERVICEMASTER IN-
DUSTRIES, INC., *et al.*, Defendants-Appellees.

First District (6th Division)   Nos. 1—91—2739, 1—91—3567 cons.

Opinion filed December 18, 1992.—Rehearing denied February 2, 1993.

Arthur G. Jaros, Jr., and Thomas C. Dudgeon, both of Richter, Jaros & Dudgeon, of Oak Brook, for appellants.

Roger L. Taylor and Leslie M. Smith, both of Kirkland & Eillis, of Chicago, for appellees.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This is an appeal by the plaintiffs from an order granting summary judgment to the defendants. The plaintiffs sued their defendant

employers alleging a breach of a particular provision of an employment agreement. In granting summary judgment the trial judge held as a matter of law that the agreement was to be interpreted in the manner advanced by the defendants.

The plaintiffs, Jack Baker, Douglas Carr, Merle Wratislaw and Arlo Johnson, were officer employees of the defendant ServiceMaster Industries, Inc. (ServiceMaster), a Delaware corporation, which provided management services to health care, educational and industrial facilities and cleaning services to residential customers. The plaintiffs began working for ServiceMaster at different times: Wratislaw in 1967, Carr and Johnson in 1970 and Baker in 1977.

In August 1979, the plaintiffs entered into a stock purchase program with other ServiceMaster officers. Under this plan, commonly known as the "487 Plan," the plaintiffs were allowed to purchase a certain number of shares of ServiceMaster stock from the corporation; the number of shares subsequently increased as the result of stock splits. In addition to the stock he received under the 487 Plan, Baker participated in another stock program for select officers of ServiceMaster. As a result of these programs, the plaintiffs' stock situation was as follows:

| Plaintiff | Initial Number of Shares | Number of Shares 12/30/86 |
|---|---|---|
| Carr | 2,000 | 10,125 |
| Johnson | 5,500 | 20,045 |
| Wratislaw | 3,000 | 15,187 |
| Baker (1979) | 3,000 | 15,187 |
| (1981) | 10,000 | 22,500 |

The plaintiffs and ServiceMaster executed two documents, both of which were drafted by ServiceMaster. The first document was entitled "Stock Subscription and Purchase Agreement"; the second document was entitled "Call Agreement." ServiceMaster gave each of the plaintiffs a disclosure statement summarizing the two agreements. The summary stated that the rights and obligations under the 487 Plan were governed by the precise language contained in those agreements.

Under the Purchase Agreement, the participant would purchase a specified amount of ServiceMaster stock from the corporation. The purchase price was the market price at the time of the agreement. The participant could pay for the stock in a lump sum or installments which could be extended over a 15-year period. Under section 7 of the agreement, ServiceMaster had the right to "assign any or all of its

rights and obligations under th[e Purchase Agreement] to any other person."

The Call Agreement gave ServiceMaster the right to repurchase this stock under certain circumstances. Section 2 of the Call Agreement provided that ServiceMaster could repurchase a certain percentage of the issued shares at the original issue price from a participant who had suffered a triggering termination. A triggering termination would occur if the participant's employment with ServiceMaster was terminated for any reason whatsoever. This provision listed several exceptions to the broad termination language, including a retirement exception. The precise percentage of shares which ServiceMaster could repurchase was determined by the length of the participant's employment. The percentage of stock which could be repurchased by the corporation declined as the length of service increased. Termination during the following periods resulted in the following call percentages:

| | |
|---|---|
| Between the 5- and 10-year anniversary of the Call Agreement | 80% |
| Between the 10- and 11-year anniversary | 60% |
| Between the 11- and 12-year anniversary | 50% |
| Between the 12- and 13-year anniversary | 40% |
| Between the 13- and 14-year anniversary | 30% |
| Between the 14- and 15-year anniversary | 20% |
| After the 15- year anniversary | 0% |

Section 6 of the Call Agreement allowed ServiceMaster to assign the right to repurchase the shares issued under the plan in limited circumstances. The interpretation of section 6 is the heart of this lawsuit, and we will discuss it in detail later.

After the Purchase Agreement and the Call Agreement were executed, ServiceMaster issued the shares to the plaintiffs under Plan 487. Baker received his additional shares under the other plan in September 1983. At the time of the issuance, at least three of the plaintiffs executed a stock issue agreement in order to comply with securities laws and to acknowledge a lump sum payment of the purchase price through a financing agreement. Under a financing agreement with Harris Trust & Savings Bank, the participant could borrow money to make the purchase and sign a demand note held by Harris.

In 1986, the management of ServiceMaster proposed that ServiceMaster Industries, Inc., be liquidated before January 1, 1987, to take advantage of an expiring Federal tax code provision. Under this proposal, the business conducted by ServiceMaster Industries, Inc., would be taken over through an assignment of assets and assumption of lia-

bilities by two limited partnerships. These limited partnerships would be managed by a corporation which would act as a general partner for the partnerships. The board of directors of the closely held corporation could be expelled only by a majority vote of at least two-thirds of the limited partners.

A proxy statement/prospectus was distributed to the shareholders by ServiceMaster. This document stated that the purpose of the liquidation and change in form was to allow ServiceMaster to operate its business without the payment of corporate income tax. The prospectus encouraged every stockholder to complete the proxy card which accompanied the prospectus.

The prospectus discussed ServiceMaster's employee benefit plans, including the stock subscription plan, under a section of the document entitled, "Proposed Treatment of Employee Benefit Plans." This section provided that all employee benefit plans not specifically described in the prospectus would be assumed by the new partnership unless it was necessary to terminate the plan for legal or tax reasons. The prospectus section discussing employee benefits stated that any terminated plans would be replaced with substantially similar employee benefit plans. The accompanying proxy card used similar language but qualified the replacement of terminated plans as "probable."

In December 1986, the shareholders approved the liquidation plan. Each of the plaintiffs voted in favor of the plan. The plan was implemented by formation under Delaware law of ServiceMaster Limited Partnership and ServiceMaster Company Limited Partnership. ServiceMaster Limited Partnership owned 99% of the profits and losses of ServiceMaster Company Limited Partnership. Shares of ServiceMaster Limited Partnership were publicly traded on the New York Stock Exchange after December 30, 1986.

On December 30, 1986, ServiceMaster executed an assignment and assumption agreement which assigned and conveyed all its assets and obligations to the two limited partnerships. This agreement also provided that ServiceMaster assigned all its rights to purchase common stock issued to employees under the stock subscription agreements.

On December 30, 1986, ServiceMaster Company Limited Partnership began conducting the business formerly conducted by ServiceMaster Industries, Inc.; ServiceMaster Limited Partnership acted as a holding company for ServiceMaster Company Limited Partnership. The assumption and assignment agreement provided that when the assets were transferred and ServiceMaster Company Limited Partnership began to conduct business, all persons who were employed by

ServiceMaster Industries, Inc., would "automatically become employees of [ServiceMaster Company]."

ServiceMaster Industries, Inc., filed for dissolution on December 30, 1986, and was subsequently dissolved under Delaware law. The outstanding shares of ServiceMaster Industries, Inc., common stock were exchanged for partnership shares in the ServiceMaster Limited Partnership at a one-to-one exchange ratio. The plaintiffs exchanged the stock they received under the 487 Plan for shares in ServiceMaster Limited Partnership. ServiceMaster Limited Partnership assumed ServiceMaster Industries, Inc.'s liability for loan guarantees made under the 487 Plan.

At various times between February 1987 and October 1989, each of the plaintiffs' employment with ServiceMaster Limited Partnership was terminated. According to the affidavits of Baker and Carr, they were terminated involuntarily. ServiceMaster Limited Partnership purported to exercise the right under the Call Agreement by sending letters to the plaintiffs. Between 1987 and 1989 the market value of ServiceMaster Limited Partnership stock was between $21 and $31 a share. Only Wratislaw complied with the call, tendering 10,631 shares at a price of $8.91 a share; the market value of the stock at this time was $29 a share. ServiceMaster Limited Partnership also reserved the right to call 1,519 additional shares belonging to Wratislaw. The defendants have subsequently agreed that no call will be made on these reserved shares.

ServiceMaster Limited Partnership initially attempted to repurchase the 487 Plan shares at $5.91 a share and later raised the price to $10.89 per share. The increase came about when the defendants realized that the plaintiffs each incurred about $3 a share in Federal income tax as a result of the corporate liquidation.

The plaintiffs brought suit for declaratory relief under section 2—701 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—701.) The plaintiffs alleged that ServiceMaster Limited Partnership was not entitled to exercise the call right because the assignment of the call right from ServiceMaster Industries, Inc., to ServiceMaster Limited Partnership was void under the terms of the Call Agreement itself or because a sufficient triggering termination had not occurred. Also, the plaintiffs alleged that as ServiceMaster Industries, Inc., was dissolved, it could not exercise the call right, and, furthermore, no one could become an assignee under the Call Agreement because under Delaware law, ServiceMaster Industries, Inc., did not have a right to merge as provided for in section 6 of the Call Agreement and, therefore, it lost the power to assign the call rights.

In addition to declaratory relief, two of the plaintiffs, Wratislaw and Johnson, sought other relief. Wratislaw sought damages under a theory of unjust enrichment for the shares he tendered to ServiceMaster Limited Partnership. He alleged that his tendering of shares was induced by the actions or omissions of the defendants. Wratislaw alleged that ServiceMaster Industries, Inc., could not exercise this right after it had been dissolved and that he had mistakenly tendered his shares after his employment was terminated. Johnson sought damages in counts II and III of his complaint for the 20,047 shares which he alleged the partnership had converted and for the partnership distributions withheld on 19,990 of these shares.

On February 14, 1990, the defendants filed a two-count counterclaim against Johnson. The plaintiffs' actions were consolidated by an agreed order entered on March 27, 1990. The defendants filed a motion to amend their answer to include the affirmative defense of estoppel. The plaintiffs objected to the motion to amend. The record does not reflect any ruling on the motion to amend.

Baker and Carr filed a motion for summary determination of a major issue which asked the judge to rule as a matter of law that the purported assignment of the call right from ServiceMaster Industries, Inc., to ServiceMaster Limited Partnership was void on the ground it violated the Call Agreement. The defendants filed a cross-motion for summary judgment with supporting affidavits. Both sides briefed these motions, and the plaintiff moved to strike the defendants' affidavits, in whole or in part.

On August 2, 1990, the trial judge heard oral arguments and took the motions under advisement. She issued a written decision on September 27, 1990, which stated that the assignment of the call right was not void. The judge reasoned that the call right was valid because the assignment was specifically allowed by section 6(b) of the Call Agreement. The judge did not rule on the plaintiffs' motion to strike part of the defendants' affidavits, although she was reminded to do so by the plaintiffs at oral argument. The trial judge also did not rule on the defendants' motion for summary judgment at that time.

On November 9, 1990, the plaintiffs filed a motion to vacate the order of September 27, 1990. This motion was subsequently denied on January 8, 1991. The defendants renewed their motion for summary judgment and filed an additional affidavit; the plaintiffs moved to strike the additional affidavit. The judge heard arguments on the motion at which time the plaintiffs requested that the judge rule on the motion to strike before ruling on the other motions.

On July 29, 1991, the judge granted the defendants' motion for summary judgment. She stated that there was no termination on December 30, 1986, when the reorganization occurred, but a sufficient triggering termination occurred when the plaintiffs' employment was subsequently terminated. She also said that she did not rely on any affidavits in arriving at her decision.

On August 18, 1991, Baker, Carr, and Wratislaw filed a notice of appeal. On November 5, 1991, Johnson filed an application in this court under Rule 308(b) (134 Ill. 2d R. 308(b)) after the appropriate finding was made by the trial judge. We granted leave to appeal and consolidated all cases.

The Call Agreement consists of 12 pages and 8 sections. Section 6, the interpretation of which is the issue in this case, is as follows:

"Section 6. *Assignment of the Call Right.*

(a) *General Prohibition.* Except as otherwise provided in Subsection 6(b), ServiceMaster shall not assign the Call Right granted by this agreement.

(b) *Acquisition Transfer.* If ServiceMaster shall merge into any other corporation or shall sell all or substantially all its assets to any other corporation, then unless ServiceMaster shall prescribe a different result: (i) the Call Right shall be transferred to the corporation (herein called the 'acquiring corporation') which shall acquire ServiceMaster's assets in such transaction, (ii) after consummation of such transaction, the acquiring corporation shall be entitled to exercise all rights granted to ServiceMaster under this agreement, and (iii) except as otherwise provided in Section 2 in connection with the definition of a Triggering Termination, all references in this agreement to 'ServiceMaster' shall be deemed after such acquisition to refer to the acquiring corporation. This agreement shall inure to the benefit of and be binding upon ServiceMaster's successors and assigns."

In her written decision, the trial judge made the following statements:

"Section 6(a) prohibits any assignment, except as provided in section 6(b). Section 6(b) contains two exceptions. The first exception is in the first sentence. It provides that where there is a merger with or sale to another corporation, an assignment is allowed. The second exception is in the second sentence. That exception is for the assignee who is a successor. The sentence states that the Call Agreement shall benefit and obligate the corporation's successors and assigns.

\* \* \*

Plaintiffs argue that 'assigns,' in the second sentence, refers to the 'other corporation' in the first sentence. Such an interpretation does not make sense since the second sentence addresses a successor assignee, as discussed above, and not another corporation which has merged with or bought the corporation, as discussed in the first sentence."

Abbreviated, the positions of the parties are these:

(1) The plaintiffs maintain that the judge erred in concluding that section 6(b) contains two exceptions to section 6(a). They insist that under section 6(b) only another *corporation*, into which ServiceMaster merged or to which ServiceMaster sold substantially all of its assets, may exercise the Call Rights.

(2) The defendants maintain that the judge was correct in concluding that section 6(b) contains two exceptions to section 6(a). They insist that the limited partnership is a successor to ServiceMaster Industries, Inc., that the second sentence of section 6(b) provides that "this agreement shall inure to the benefit of" a successor and, therefore, the limited partnership had the right to exercise the call. The defendants further maintain that acceptance of the plaintiffs' argument would render the second sentence of section 6(b) superfluous.

(3) The plaintiffs respond to the defendants' argument that their interpretation would render the second sentence of section 6(b) superfluous by arguing that the term "this agreement," used in the second sentence of section 6(b), refers to the entire Call Agreement and not to section 6.

■ In interpreting a contract, a court must ascertain the intent of the contracting parties. The court cannot remake a contract to give a litigant a better bargain than he himself was satisfied to make. (*Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 281 N.E.2d 462.) A contract must be enforced as written, not as one party later finds he would prefer it to be written. *Michigan Avenue National Bank v. Evans, Inc.* (1988), 176 Ill. App. 3d 1047, 531 N.E.2d 872.

If an agreement is unambiguous, the intent of the parties must be determined as a matter of law from the writing itself. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 565 N.E.2d 990.) A contract is ambiguous only if its terms can reasonably be interpreted in more than one way. (*Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440, 581 N.E.2d 664.) Ambiguity is not automatically present when the parties disagree on the meaning of the con-

tract. *Newcastle Properties, Inc. v. Shalowitz* (1991), 221 Ill. App. 3d 716, 582 N.E.2d 1165.

We interpret the judge's statements to mean that she found that section 6(b) was not ambiguous and that it must be construed as a matter of law to mean that the two sentences of section 6(b) constituted two separate exceptions to section 6(a). We do not agree with either finding.

Acceptance of the judge's conclusion and the defendants' interpretation necessarily depends on acceptance of their first premise, which is: the second sentence of section 6(b) is an exception in addition to the exception of the first sentence. Acceptance of that first premise in turn necessarily depends on acceptance of the defendants' definition of the term, "this agreement," in the second sentence. Under the definition accepted by the judge, "this agreement" in the second sentence means section 6. We are not prepared to accept that definition of the term as a matter of law. We believe that substantial reasons exist to accept the plaintiffs' argument that the term, "this Agreement," in the second sentence of section 6(b) refers to the entire Call Agreement and not section 6.

■■ ■ It is the general rule that words used in one sense in one part of a contract are deemed to have been used in the same sense in another part of the contract where there is nothing in the context to indicate otherwise. (See *Cedar Park Cemetery Association v. Village of Calumet Park* (1947), 398 Ill. 324, 75 N.E.2d 874, citing *Chicago Home for Girls v. Carr* (1921), 300 Ill. 478, 133 N.E. 344; see also 17A C.J.S. *Contracts*, §303 (1963).) The term, "this agreement," is used four times in section 6, including the second sentence of section 6(b). Section 6(a) provides that "ServiceMaster shall not assign the Call Right granted by this agreement"; section 6(b) provides that "an acquiring corporation shall be entitled to exercise all rights granted to ServiceMaster under this agreement." Most important, section 6(b) further provides, "except as otherwise provided in Section 2 in the definition of a 'Triggering Termination,' all references in this agreement to 'ServiceMaster' shall be deemed *** to refer to the acquiring corporation." It is clear to us that the term, "this agreement," as used in all the parts of section 6, other than the second sentence of section 6(b), refers to the Call Agreement as a whole. Following the general rule of consistent construction, therefore, it is reasonably arguable that the term, "this agreement," in the second sentence of section 6(b) also refers to the entire agreement embodied in the 12-page Call Agreement rather than only section 6.

Both sides have argued at great length on the question of whether a corporation may be a successor and have cited many cases. They have also argued at great length on the question of whether "successors" and "assigns" have the same meaning. Those arguments need not be addressed because we conclude that section 6(b) may not be read to mean, as a matter of law, that it contains two separate exceptions to section 6(a) and that, therefore, the judge erred in so reading section 6(b) as a matter of law.

■ Our initial reading of section 6 raised the inference that the term "corporation" was used inadvertently. But the record contains proof to the contrary.

ServiceMaster sent a description of the 487 Plan to all prospective participants, which included a summary of the Purchase Agreement and the Call Agreement. In that summary also, ServiceMaster expressly referred to the rights of an "acquiring corporation" to terminate the plaintiffs' employment and to exercise the call right.

Both the plaintiffs and the defendants have relied in this court on part of the affidavit of C. William Pollard, the chairman and chief executive officer of ServiceMaster Limited Partnership, in which he said the following:

"The term 'corporation' was used in section 6 of the Call Agreements *** because at the time those agreements were entered into in 1979 and thereabouts neither I, nor anyone else to my knowledge, contemplated that any entity other than a corporation could or would purchase or merge with an enterprise as large as ServiceMaster Industries."

We find it significant that the Purchase Agreement, also drafted by ServiceMaster and submitted to the plaintiffs simultaneously with the Call Agreement, expressly empowers ServiceMaster to "assign any or all of its rights and obligations under [the Purchase Agreement] to any other person." (Emphasis added.)

From these facts we judge that a reasonable inference may be drawn that the term "corporation" was used by the defendants in the Call Agreement advisedly.

The defendants argue that the plaintiffs' interpretation that a call right may be exercised only by an "acquiring corporation" elevates "form over substance." Our initial reaction to the defendants' argument was favorable to the defendants. But the plaintiffs have made a reasonable argument in response. An analysis of these arguments requires that we examine the particular rights and obligations of the parties under the Call Agreement.

■ As explained by ServiceMaster to the plaintiffs before they entered into the agreement, ServiceMaster had the right to require the plaintiffs to sell their unvested stock at termination at the price the plaintiffs paid for it. But ServiceMaster was not obligated to exercise its call rights. Even if the plaintiffs' employment was terminated, they could still be held obliged to purchase stock under the Purchase Agreement. ServiceMaster could elect to wait until the end of the 15-year term of the agreement and at ServiceMaster's option require the plaintiffs to pay for any unissued stock or to resell the requisite percentage of stock back to ServiceMaster. As can be seen, the weight of that part of the Call Agreement tilts markedly in favor of Service-Master. The question then arises: Might one reasonably refrain from entering into the Purchase Agreement and Call Agreement if the options available to ServiceMaster were instead available to a limited partnership rather than a corporation? In their brief and in oral argument, the plaintiffs have pointed out that as stockholders in a corporation they had the right to elect or reject board members on a simple majority basis and could engage in a proxy fight. In contrast, a limited partnership has no board of directors, the decision-makers of the limited partnership are not elected by shareholders and the shareholders' right to remove the managing general partner has been changed to a two-thirds (or greater) majority requirement. The defendants have not responded to the argument that a substantial difference exists between the plaintiffs' rights as shareholders of a corporation and their rights as shareholders in a limited partnership. They admit that the plaintiffs' voting rights have been diminished by the reorganization. In brief, the plaintiffs' argument is that as shareholders in a corporation they had more influence over those who would decide whether to exercise the call than they had as shareholders of a limited partnership and that they would more readily contract with those with whom they had more influence. This is not an unreasonable argument. For these reasons, we judge that the plaintiffs' interpretation of section 6 was not unreasonable and that the judge erred in granting summary judgment to the defendants.

■ The plaintiffs make the additional argument that no triggering termination occurred under the agreement because the termination was made by a limited partnership. The plaintiffs' argument begs the question; it depends on acceptance of their interpretation of section 6(b) as a matter of law.

■ The plaintiffs also ask that we invoke the rule of construction that ambiguities in a contract must be resolved against the drafter of the contract and that we enter judgment in their favor here. That

rule of construction, of course, is but one rule of construction where an ambiguity exists. Another rule is that extrinsic evidence is admissible to assist a fact finder in determining the intent of the parties. Both sides have submitted affidavits in support of their motions for summary judgment. A motion to strike the defendants' affidavits has still not been ruled upon. The sufficiency of those affidavits to establish the intent of the parties has not been briefed or argued. Consequently, we judge that a ruling here in favor of the plaintiffs would be premature. By these observations we do not mean to suggest that the case must be decided on summary judgment. We point out that interpretation of an ambiguous contract is a question of fact. *Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 565 N.E.2d 990.

For these reasons, the order granting summary judgment in favor of the defendants is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed and remanded.

McNAMARA and RAKOWSKI, JJ., concur.