MICHAEL KERTON *et al.*, Plaintiffs and Counterdefendants-Appellants, v. LUTHERAN CHURCH EXTENSION FUND, Defendant and Counterplaintiff-Appellee.

Second District   No. 2—92—1215

Opinion filed May 5, 1994.

Laura L. Kerton and Robert W. Brown, Jr., both of Dunlap & Brown, Ltd., of Libertyville, for appellants.

James L. Brendemuhl, of Boeger, Heerwagen, Lusthoff & Brendemuhl, P.C., of Riverside, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Before closing on the purchase of a vacant parcel of property, plaintiffs, Michael Kerton and Peter DeVore, notified defendant of their objection to a right-of-way for natural gas pipeline and brought an action requesting the return of their earnest money. Defendant denied the existence of any defect in title and counterclaimed that plaintiffs' objection was untimely. The trial court ruled that plaintiffs' objection was timely, but that the right-of-way for pipeline was a permissible exception and condition of title and not subject to objection by plaintiffs.

On appeal, plaintiffs maintain that the trial court erred in failing to interpret the contract as a whole, in failing to examine extrinsic evidence to determine the intent of the parties, and in ruling that the exercise of the right-of-way agreement did not make the defendant's title unmerchantable. We reverse.

On February 15, 1991, plaintiffs, as buyers, and defendant, as seller, entered into a contract for the sale of approximately 20 acres of real estate located in Lake County, Illinois. Paragraph 7(a) of the contract provided that, within 21 days from the date of execution of the contract, defendant was to furnish plaintiffs with a commitment for title insurance. Paragraph 7(b) gave plaintiffs 15 working days after receipt of the title commitment to notify defendant of any conditions in the title that were not acceptable to plaintiffs. Plaintiffs paid $9,000 in earnest money.

First American Title Insurance Company (First American) issued a commitment for title insurance that was received in the office of plaintiffs' attorney on February 28, 1991. On the same day, plaintiffs' attorney requested from the title officer for First American a copy of

the right-of-way agreement listed as an exception in the title commitment. Plaintiffs' attorney received the right-of-way agreement on March 11, 1991, and, on the same date, requested from the title officer a copy of a survey of the property showing the exact location of the pipeline.

Plaintiffs' attorney received the plat of survey on March 21, 1991, and, on March 22, sent a letter to defendant stating that the right-of-way agreement was an unacceptable condition of title, because it effectively removed 2.3 acres from the site. Plaintiffs offered to purchase the "useable acreage," reduced to 17.7 acres, at a modified price; if this was unacceptable to defendant, plaintiffs gave notice that they would declare the contract null and void and request the immediate return of their earnest money.

On August 2, 1991, plaintiffs filed a complaint in interpleader requesting the return of their earnest money pursuant to the provisions of the contract. On September 26, 1991, defendant filed an answer, denying that any defects in title existed that needed to be cured. With its answer, defendant filed a counterclaim, asserting that plaintiffs had failed to notify defendant, in writing, within 15 working days from the date of delivery of the title commitment of any conditions of title disclosed therein that were not acceptable and, consequently, plaintiffs were deemed to have approved conditions affecting title disclosed by the commitment. Defendant claimed that it was entitled to the earnest money as liquidated damages for plaintiffs' breach of the contract.

Both parties filed motions for summary judgment, which were denied by the trial court. On July 8, 1992, the trial court ruled for defendant, finding that the title commitment provided by defendant was not complete until March 21, 1991, and notice was timely made by plaintiffs' attorney of plaintiffs' objections to the title commitment, but that the right-of-way was a permissible exception and condition of title pursuant to paragraph 7(a) of the contract and not subject to objection.

The trial court denied plaintiffs' motion to vacate or modify judgment, stating that it was unwilling to examine the intent of the parties when entering the contract or the argument that the right-of-way agreement effectively foreclosed use of 2.3 acres of the property making defendant's title unmerchantable. This appeal ensued.

The first issue raised by plaintiffs is whether the trial court erred in failing to interpret the contract as a whole and in holding that the right-of-way for the gas pipelines was a permissible exception and condition of title pursuant to paragraph 7(a) and not subject to objection by plaintiffs.

The primary objective in construing a contract is to give effect to the parties' intent, and to discover this intent the various contract provisions must be viewed as a whole. (*Robert S. Pinzur, Ltd. v. The Hartford* (1987), 158 Ill. App. 3d 871, 876.) Words derive meaning from their context, and contracts must be viewed as a whole by examining each part in light of the other parts. (*Board of Trade v. Dow Jones & Co.* (1983), 98 Ill. 2d 109, 122-23; *Pinzur*, 158 Ill. App. 3d at 876.) Contract language must not be rejected as meaningless or surplusage (*Grigoleit, Inc. v. Board of Trustees of the Sanitary District* (1992), 233 Ill. App. 3d 606, 615); it is presumed that the terms and provisions of a contract are purposely inserted and that the language was not employed idly (*Szczerbaniuk v. Memorial Hospital* (1989), 180 Ill. App. 3d 706, 713). Because the interpretation of a contract is a question of law, we may interpret the contract independently of the trial court's judgment. *Rogers v. Balsley* (1993), 240 Ill. App. 3d 1005, 1010.

The trial court evidently relied on paragraph 7(a) of the contract. Paragraph 7(a) provides that defendant is to furnish plaintiffs, within 21 days of the execution of the contract, a commitment for title insurance

"showing good and merchantable title, free and clear of all taxes other than general taxes for the current year and following, and subject to all assessments, liens, encumbrances, zoning laws and ordinances, building restrictions, easements, rights-of-way, leases, mineral deeds, water rights, reservations, and other conditions of record, if any."

According to its stated ruling, the trial court construed the list of potential conditions of record in paragraph 7(a) as enumerating exceptions to which plaintiffs, as buyers, could not object. However, this interpretation overlooks other parts of paragraph 7.

Paragraph 7's introductory clause reads as follows:

"7. Title. The following *provisions* shall govern the examination of title to the Property and the conditions subject to which title shall be conveyed by Seller to Buyer." (Emphasis added.)

We must presume that the plural of the word "provision" was not idly employed. (*Szczerbaniuk*, 180 Ill. App. 3d at 713.) Therefore, the introductory language of paragraph 7 indicates that all its parts are to be considered.

Paragraph 7(b) states in full:

"Following delivery of the *preliminary* title report to Buyer or Buyer's attorney, Buyer shall have 15 working days to examine such report and to notify Seller in writing of *any* conditions in title disclosed on it not acceptable to Buyer. In the absence of

such notice, Buyer shall be deemed to have approved conditions affecting title disclosed on the commitment for all purposes of this Agreement." (Emphasis added.)

The trial court's interpretation of paragraph 7(a) renders paragraph 7(b) without meaning. If conditions of record listed on the title commitment must be accepted by the buyer, then a provision that explicitly permits the buyer to notify the seller of "any" unacceptable conditions disclosed on the "preliminary" title report is purposeless.

Defendant argues that the only conditions plaintiffs may object to are those affecting the merchantability of title. Otherwise, defendant maintains, the conditions of record listed in paragraph 7(a) are unnecessary surplusage. We disagree.

. Defendant's interpretation ignores the clear meaning of "any conditions" in paragraph 7(b); if the parties had wanted to permit objections only to certain conditions of title, paragraph 7(b) could easily have been drafted to reflect that intention. Furthermore, the plain meaning of "any conditions" in paragraph 7(b) does not deprive paragraph 7(a) of meaning. The two paragraphs, which must be viewed together, can be integrated as follows: the buyer may notify the seller of conditions he finds unacceptable after examining a preliminary title report showing any conditions of record to which the title of the property is subject. The conditions of record enumerated in paragraph 7(a) are meaningful as a list of what must be disclosed on the title commitment.

Moreover, defendant's interpretation is contradicted by other provisions of the contract. Paragraph 6 provides in part:

"At Closing, Seller shall deliver to Buyer a general warranty deed conveying title to the Property to the Buyer, subject to the exceptions permitted pursuant to Paragraph 7, below."

According to defendant, the exceptions permitted pursuant to paragraph 7 are specifically those conditions that do not affect the merchantability of title. This reading might find support if paragraph 6 stated explicitly that the deed conveying title was subject to the exceptions permitted by paragraph 7(a). However, bound by the natural and ordinary meaning of the contract's terms (*Berutti v. Dierks Foods, Inc.* (1986), 145 Ill. App. 3d 931, 934), we must conclude that the parties intended in paragraph 6 to refer to the exceptions permitted by the totality of paragraph 7. As stated above, paragraph 7(b) permits the buyer to notify the seller of *any* unacceptable conditions of record disclosed on the preliminary title report.

Similarly, paragraph 7(c) gives the seller the opportunity to cure "any objections to the state of title *** made in any [notice as

provided for in paragraph 7(b)]." Paragraph 7(c) further permits the seller to "cure such conditions and to make title to the Property marketable *** if necessary to such purpose." This language indicates to us that the buyer may notify the seller of any objections to the state of title, including, but not limited to, any conditions of title affecting its marketability.

We note that plaintiffs argue on appeal that a pipeline right-of-way is, in fact, a defect affecting the merchantability of title. Although addressed by both parties in their briefs, that issue need not be resolved in order to dispose of the cause before us.

Based on our construction of the contract as drafted, we conclude that the trial court's interpretation of paragraph 7(a) in apparent isolation from the contract's other pertinent provisions was erroneous. The court's finding that plaintiffs gave timely notice of their objection is not an issue on appeal. We do not reach the further issues presented for review.

We reverse the circuit court's judgment.

Reversed.

DOYLE and PECCARELLI, JJ., concur.