ROBERT W. LEMPA *et al.*, Plaintiffs and Counterdefendants-Appellants, v. GORDON FINKEL *et al.*, Defendants and Counterplaintiffs-Appellees.

Second District    No. 2—95—0640

———

Opinion filed March 22, 1996.

D. Kendall Griffith, Nancy G. Lischer, and Gary W. Klages, all of Hinshaw & Culbertson, of Chicago, for appellants.

Diane E. Winter and Lara L. Willner, both of Fuqua, Winter, Stiles & Anderson, Ltd., of Waukegan, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs and counterdefendants, Robert W. Lempa and Luann J. Lempa (Lempas), filed a complaint against defendants and counterplaintiffs, Gordon Finkel and Sharon Finkel (Finkels), for breach of a mortgage note. The Finkels counterclaimed on various grounds. After a bench trial, the trial court entered judgment for both parties on their respective claims. The Lempas appeal that part of the order entering judgment for the Finkels on their counterclaim. We affirm in part and reverse in part.

## BACKGROUND

The following facts are taken from the record. On August 31,

1990, the Finkels and Lempas executed four documents: (1) a building lease; (2) a business lease with an option to purchase the business (business lease); (3) an option to purchase (the business); and (4) a covenant not to compete. Under the building lease, the Lempas leased a portion of the building at 2678 Sheridan Road, Zion, Illinois, to the Finkels. One clause of the lease, the exculpation clause, provides that the Lempas were not liable for any damages occasioned by water, snow, or ice coming through the roof.

Under the business lease, the Lempas leased to the Finkels a dry cleaning business located at 2678 Sheridan Road (Liberty Cleaners), the goodwill of the business, and the right to use the name of the business, its telephone number, and certain equipment. Although labelled "Business Lease With Option to Purchase," the document makes reference to an option to purchase the business only indirectly in paragraph 6. That paragraph provides that, if the Finkels exercised their option to purchase the business, the security deposit paid by the Finkels on the business lease would be credited to the sale price of the business.

The parties also signed a document labelled "Option To Purchase." Under this document, the Lempas gave the Finkels the exclusive option to purchase Liberty Cleaners for $120,000. $30,000 was payable upon execution and delivery of the option; the remaining $90,000 would be loaned by the Lempas to the Finkels, to be repaid by the Finkels in the amount of $1,214.42 per month for 10 years. The purchase price was apportioned as follows: $76,000 for the business' machinery; $15,000 for the business' goodwill; and $29,000 for the Lempas' agreement not to compete with the Finkels. The option did not include the right to purchase the building in which the business was located.

The last document executed by the parties was a covenant not to compete. It prohibits the Lempas from engaging in the dry cleaning business within five miles of the City of Zion. Although the document states that the covenant was to run for three years, it does not state when that period would start. A handwritten statement on the document reads: "The seller further covenants and agrees not to solicit, or in any way offer employment to the existing employees of Liberty Cleaners, namely:". No employee names are listed in the document. At trial, Mrs. Lempa testified that she wrote this statement at Mrs. Finkel's request because Mrs. Finkel wanted to prevent Mr. Lempa from soliciting any employees from Liberty Cleaners. Mrs. Finkel testified that she did not know how the handwriting appeared on the document.

On January 18, 1991, the Finkels signed a notice stating their

intent to exercise their option to buy the business for $120,000. On May 22, 1991, the Finkels signed a mortgage note wherein they promised to pay the Lempas the principal sum of $90,000 plus interest on that sum at the rate of 10.5% per annum. Payments were to be $1,214.12 per month for 10 years. On July 15, 1991, the Lempas delivered the bill of sale of the business to the Finkels.

In the fall of 1991, the Finkels advised the Lempas that the roof was leaking. The Lempas attempted to repair the roof but, according to the Finkels, the repairs did not stop the leaking. On January 24, 1992, the Finkels signed a contract to purchase a building at 2730 Sheridan Road. On March 24, 1992, the Finkels filed suit against the Lempas seeking rescission of the building lease due to the Lempas' failure to repair the leaking roof. On November 12, 1992, the trial court, Judge Margaret Mullen presiding, entered an order rescinding the building lease agreement. Neither party appealed this order.

After December 1992, the Finkels stopped their payments on the mortgage note. Although the Finkels closed on their new building on January 22, 1993, they did not move until August 16, 1993. The Finkels apparently remodeled the new location during this interlude. Upon moving, the Finkels retained the name of their business as Liberty Cleaners. On or about October 1, 1993, the Lempas opened a dry cleaning business at 2678 Sheridan Road under the name "Zion's Best Cleaners."

Meanwhile, on March 12, 1993, the Lempas filed a complaint against the Finkels for foreclosure of the mortgage note. In the complaint, the Lempas alleged that the Finkels breached the terms of the mortgage note by failing to make their monthly payments of $1,214.12 since January 1993.

The Finkels responded by filing a two-count counterclaim. Count I, labelled "Breach of Contract," alleged that the Lempas breached the building lease by failing to maintain the building in good repair; that this breach made it impossible for the Finkels to operate their business; and that as a result of the breach the Finkels were forced to relocate their business, purchase a new building, and incur substantial moving expenses. The Finkels sought damages for lost profits, moving expenses, and costs incurred for the purchase of the new location. Count II alleged that the Lempas breached the covenant not to compete by opening a dry cleaning business at 2678 Sheridan Road on or about September 1, 1993. The Finkels sought damages for loss of goodwill and lost profits resulting from this breach.

After a bench trial, the trial court entered an order on December 13, 1994, granting judgment for both parties on their respective claims. Regarding the Lempas' complaint, the trial court found that

the Finkels were obligated to pay the Lempas $1,214.12 per month until the mortgage note was paid in full. Because 23 payments were past due as of the date of the entry of the order, the trial court held that the Lempas were entitled to judgment against the Finkels in the amount of $27,924.76.

Regarding count I of the Finkels' counterclaim—breach of contract—the trial court noted that Judge Mullen had entered an order on November 12, 1992, in the earlier suit, rescinding the building lease because the Lempas had materially breached their covenant to repair and maintain the business premises. The court then ruled that the doctrine of election of remedies did not bar the Finkels from recovering "rescission and restitution damages" for the Lempas' breach of the covenant to repair and maintain the business premises. The court stated that the fact that the Finkels sought rescission without seeking restitution in the earlier action did not bar them from seeking restitution in their counterclaim because "until the rescission was granted and the Finkels moved from the premises, their damages were speculative and undetermined." Thus, the Finkels were entitled to "restitution damages" in the amount of $13,031.26 for relocation expenses and $51,000 for remodeling expenses. The trial court also noted that "there was insufficient evidence presented to [it] to determine restitution damages resulting from lost profits."

Regarding count II of the counterclaim—breach of the covenant not to compete—the trial court made the following findings: the covenant took effect on July 15, 1991, the date the purchase of the business was consummated; prior to July 15, 1991, the Lempas had received no consideration for the covenant; the covenant was reasonable as to time, area, and scope; and the Lempas breached the covenant by opening Zion's Best Cleaners on October 1, 1993. The court then stated that the Finkels were entitled to prorated damages for breach of the covenant not to compete in the amount of $7,626.24.

The trial court also stated that the Finkels were entitled to damages for loss of goodwill to their business because of the Lempas' breach of the building lease and the covenant not to compete. According to the trial court, the Finkels were entitled to only one recovery for damages to goodwill. Based on the value attributed to the goodwill in the option to purchase, the court held that the Finkels were entitled to damages for loss of goodwill in the amount of $15,000. After the trial court denied their motion to reconsider, the Lempas filed this timely appeal.

## DISCUSSION

The Lempas have three principal contentions on appeal: (1) the

trial court erred in awarding damages for breach of the building lease since that document was rescinded by prior court order; (2) the trial court erred in awarding damages for breach of the covenant not to compete; and (3) the trial court erred in failing to award interest on the amount due under the mortgage note.

# I

The Lempas' first contention is that the trial court erred in awarding damages for breach of the building lease since that document was rescinded by prior court order. The Lempas posit three alternative arguments in support of this contention: (1) the doctrine of election of remedies precluded the trial court from awarding damages for breach of the rescinded building lease; (2) the doctrine of *res judicata* barred the Finkels from bringing a second suit; and (3) the exculpation clause of the building lease absolved them of liability for any damage occasioned by the leaking roof. However, because we find the Lempas' first argument convincing, we need not address the Lempas' remaining arguments.

As noted, the Lempas initially argue that the doctrine of election of remedies precluded the trial court from awarding damages for breach of the rescinded building lease. The Lempas maintain that count I of the Finkels' counterclaim seeks damages based on a breach of the building lease, which was rescinded in an earlier action. The Lempas reason that, because an award of damages for breach of a contract is inconsistent with a rescission of the same contract (*Newton v. Aitken*, 260 Ill. App. 3d 717, 719-20 (1994)), the trial court improperly granted the Finkels damages based on breach of the rescinded building lease. The Finkels respond that count I is premised on the Lempas' breach of the business lease, not on the Lempas' breach of the rescinded building lease.[1]

Analytically, therefore, the Lempas' argument requires us to consider two questions: (1) does count I of the Finkels' counterclaim seek damages based on breach of the rescinded building lease? and (2) if so, is the trial court's award of damages proper, *i.e.*, are the damages restitutionary? Before we do so, a general overview of the doctrine of election of remedies is appropriate.

■ The doctrine of election of remedies is applicable only where a party has elected inconsistent remedies for the same injury or cause of action. *People ex rel. Ames v. Marx*, 370 Ill. 264, 270-71 (1938); *Streams Condominium No. 3 Ass'n v. Bosgraf*, 219 Ill. App. 3d 1010,

---

[1]Due to our analysis of this issue, we need not address whether a novation of the business lease with option to purchase occurred when the Finkels exercised their option and purchased Liberty Cleaners.

1015 (1991). The prosecution of one remedial right to judgment or decree constitutes an election barring subsequent prosecution of inconsistent remedial rights. *Paoli v. Zipout, Inc.*, 21 Ill. App. 2d 53, 57-58 (1959); *Roberts v. Sears Roebuck & Co.*, 617 F.2d 460, 464-65 (7th Cir. 1980) (interpreting Illinois law), *cert. denied*, 449 U.S. 975, 66 L. Ed. 2d 237, 101 S. Ct. 386 (1981). For instance, a remedy based on the affirmance of a contract (*e.g.*, damages) is generally inconsistent with one based on the disaffirmance of the contract (*e.g.*, rescission). *Wollenberger v. Hoover*, 346 Ill. 511, 543 (1931); *Newton*, 260 Ill. App. 3d at 720. Thus, the election of either remedy is an abandonment of the other. *Newton*, 260 Ill. App. 3d at 720.

With these principles in mind, we turn to the first question: does count I of the Finkels' counterclaim seek damages based on a breach of the rescinded building lease? The Finkels argue that count I is based on a breach of the business lease and that they argued this position in their responses to various pretrial motions. The Lempas argue that count I requests damages based solely on an alleged breach of the building lease. In support of this position, the Lempas direct our attention to the language employed in count I. According to the Lempas, count I does not allege that the leaking roof was a breach of the business lease; rather, count I expressly bases its claim for damages on the breach of the building lease.

■ Initially, we note that it is irrelevant whether the Finkels argued in their responses to various pretrial motions that count I sought damages based on the Lempas' breach of the business lease. It is axiomatic that a party must recover, if at all, on and according to the case he has made for himself by his pleadings. *Hall v. InPhoto Surveillance Co.*, 271 Ill. App. 3d 852, 856 (1995); *Broberg v. Mann*, 66 Ill. App. 2d 134, 137-38 (1965). The Finkels never amended count I; thus, we consider the Finkels' request for relief under count I according to the facts pleaded in that count. See *Newton*, 260 Ill. App. 3d at 718.

Illinois requires fact pleading, not notice pleading. *Adkins v. Sarah Bush Lincoln Health Center*, 129 Ill. 2d 497, 518 (1989). Under "fact pleading," the pleader is required to set out ultimate facts which support his cause of action. *La Salle National Trust N.A. v. Village of Mettawa*, 249 Ill. App. 3d 550, 557 (1993). Despite the requirement of fact pleading, courts are to construe pleadings liberally to do substantial justice between the parties. *Classic Hotels, Ltd. v. Lewis*, 259 Ill. App. 3d 55, 60 (1994).

■ In light of these principles, we conclude that count I seeks relief based on the Lempas' breach of the building lease, not breach of the business lease. Count I alleges in pertinent part:

"4. That after Defendants [the Finkels] purchased the business, Plaintiffs [the Lempas] breached the Lease Agreement [business lease] by their willful refusal to maintain the building in good repair, specifically, to repair the roof, which caused the building to become uninhabitable.

5. That Plaintiffs' breach of the Lease Agreement created conditions rendering it impossible for the Defendants to continue operating the business at the 2678 Sheridan Road address.

6. That as a result of the breach of the Lease Agreement by the Plaintiffs, the Defendants were forced to remove the business from said building and seek a new location.

7. That as a result of Plaintiffs' breach of the Lease Agreement, the Defendants were forced to shut down their business, purchase a new building, and incur substantial moving expenses in the process of relocating their business.

8. That as a result of the Plaintiffs' breach of the Lease Agreement, the Defendants have lost the benefit of the good will of the business purchased from Plaintiffs connected with the dry cleaning laundry business at 2678 Sheridan Road, Zion, Illinois.

9. That on or about August 16, 1993, the Defendants vacated 2678 Sheridan Road, Zion, Illinois, and the Plaintiffs immediately thereafter posted a sign indicating that said business was closed for remodeling.

10. That said representation by the Plaintiffs was an attempt to diminish the good will of the business previously sold to Defendants."

Even a cursory reading of these allegations reveals that count I seeks damages based on a breach of the building lease. Paragraphs 4, 5, 6, 7, and 8 allege that the Lempas breached the building lease and that this breach resulted in damages to the Finkels. Moreover, count I is devoid of any allegation that the Lempas' breach of the building lease constituted a breach of the business lease, and the Finkels are unable to direct our attention to any specific allegation in count I which supports their claim that count I seeks damages based on a breach of the business lease. Thus, even construing count I liberally (see *Classic Hotels, Ltd.*, 259 Ill. App. 3d at 60), we are compelled to conclude that count I seeks damages based on the building lease.

Parenthetically, we note that the trial court interpreted count I in a similar manner. In its order, the trial court stated that count I of the counterclaim sought damages "for breach of the store lease [building lease] consisting of lost profits, damage to good will, and the cost of relocating and remodeling the new location." The trial court also found that "[t]he damages incurred by the Finkels arise from the breach of the building lease and from the covenant not to

compete." The trial court therefore apparently operated under the belief we hold today: that count I of the Finkels' counterclaim seeks damages for breach of the building lease.

However, our inquiry does not end here. Although count I seeks relief based on a breach of the rescinded building lease, the trial court characterized the relief it granted to the Finkels as restitution-ary. Specifically, the trial court found that the Finkels were entitled to "restitution damages" in the amount of $13,031.26 for relocation expenses and $51,000 for remodeling expenses. Since restitution is appropriate in cases involving a rescinded contract, we must consider a second question: is the trial court's award of damages proper, *i.e.*, are the damages restitutionary? To answer this question, we need to examine the remedy of rescission.

■ A "rescission" of a contract constitutes a termination of that contract with restitution. *Kirchhoff v. Rosen*, 227 Ill. App. 3d 870, 877 (1992). To state a cause of action for rescission, the plaintiff must allege facts which establish that there has been substantial nonperformance or a substantial breach by another party. *Wilkonson v. Yovetich*, 249 Ill. App. 3d 439, 445 (1993). Generally, a contract may be rescinded only where the court is able to place each side in the status quo *ante*, the status before the contract. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 58 (1994); *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 629 (1993). Restoring the parties to the status quo *ante* requires each party to return to the other the value of the benefits received under the rescinded contract. *Newton*, 260 Ill. App. 3d at 720; *Felde v. Chrysler Credit Corp.*, 219 Ill. App. 3d 530, 542 (1991). Where costs claimed by one party do not represent a benefit conferred on the other party, such costs are properly disallowed as restitution. See *U.S. Minerals & Mining, Inc. v. Licensed Processors, Ltd.*, 194 Ill. App. 3d 428, 433 (1990); *Puskar v. Hughes*, 179 Ill. App. 3d 522, 530 (1989).

■ Applying these principles to the present case, we conclude that the trial court erred in awarding "restitution damages" to the Finkels. The trial court awarded "restitution damages" in the amount of $13,031.26 for relocation expenses and $51,000 for remodeling expenses. At first blush, these damages appear to be consequential damages. See *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 318-19 (1987) (where a contract is breached, recoverable damages are those which naturally result from the breach or are the consequence of special or unusual circumstances which were within the reasonable contemplation of the parties when making the contract).

Upon closer inspection, it becomes apparent that, at a minimum,

the "restitution damages" awarded the Finkels are not restitutionary. When the building lease was rescinded, the parties were required to return to each other the value of the benefits received under the rescinded contract. See *Newton*, 260 Ill. App. 3d at 720. Although the relocation and remodeling expenses conferred a benefit on the Finkels, they did not confer a benefit on the Lempas. In other words, the Lempas did not receive any benefit from the expenses the Finkels incurred when they relocated to and remodeled their new location. As such, these expenses are not restitutionary. *Cf. U.S. Minerals & Mining, Inc.*, 194 Ill. App. 3d at 433 (finding that any costs incurred by the defendant in moving factory did not benefit the plaintiff and were not to be considered in the calculation of restitution for the plaintiff).

Because the Finkels elected and received the remedy of rescission for the Lempas' breach of the building lease and because the damages the trial court awarded to the Finkels based on that breach are not consistent with the accompanying remedies of rescission and restitution, we conclude that the trial court erred in awarding these damages to the Finkels. We note that our decision does not affect the trial court's award of $15,000 to the Finkels for damages to the goodwill of Liberty Cleaners, since those damages were granted for the Lempas' breach of the covenant not to compete.

## II

The Lempas' second contention is that the trial court erred in awarding damages for breach of the covenant not to compete. The Lempas premise this contention on two arguments.

## A

The Lempas initially argue that the obligations of the covenant not to compete were triggered when the covenant was executed, not when the Finkels purchased the business. The covenant prohibits the Lempas from engaging in the dry cleaning business for three years. The Lempas opened Zion's Best Cleaners on or about October 1, 1993. The Lempas argue that the covenant, when read in light of the building lease, business lease, and option to purchase, was intended to take effect on August 31, 1990, the day the Finkels began operating Liberty Cleaners under the business lease. Thus, because they opened Zion's Best Cleaners on October 1, 1993, which was over three years from when the Finkels began operating Liberty Cleaners, the Lempas reason that the trial court improperly awarded damages based on a breach of the covenant.

Generally, courts strictly construe and interpret covenants not to compete, and any doubts or ambiguities must be resolved in favor

of natural rights and against restriction. *Hagerty, Lockenvitz, Ginzkey & Associates v. Ginzkey*, 85 Ill. App. 3d 640, 643-44 (1980). However, courts should view restrictive covenants accompanying the purchase of assets more favorably than those connected with employer-employee relationships because of the arm's-length bargaining position of the parties. *Diepholz v. Rutledge*, 276 Ill. App. 3d 1013, 1016 (1995). These covenants are often necessary to protect property interests. *Diepholz*, 276 Ill. App. 3d at 1016. "A covenant ancillary to the sale of a business ensures the buyer that the former owner will not walk away from the sale with the company's customers and good will, leaving the buyer with an acquisition that turns out to be only chimerical." *Central Water Works Supply, Inc. v. Fisher*, 240 Ill. App. 3d 952, 957 (1993).

Here, the issue is whether the covenant not to compete was triggered when the Lempas sold the business or when they leased it. Our resolution of this issue depends on our construction of the covenant not to compete. The primary objective in construing a contract such as a covenant not to compete is to give effect to the parties' intent, and to discover this intent the various contract provisions must be viewed as a whole. See *Clay v. Illinois District Council of the Assemblies of God Church*, 275 Ill. App. 3d 971, 977-78 (1995); *Kerton v. Lutheran Church Extension Fund*, 262 Ill. App. 3d 74, 77 (1994). Words derive meaning from their context, and contracts must be viewed as a whole by examining each part in light of the other parts. *Board of Trade v. Dow Jones & Co.*, 98 Ill. 2d 109, 122-23 (1983); *Kerton*, 262 Ill. App. 3d at 77. Contract language must not be rejected as meaningless or surplusage, and it is presumed that the terms and provisions of a contract are purposely inserted and that the language was not employed idly. *Kerton*, 262 Ill. App. 3d at 77; *Grigoleit, Inc. v. Board of Trustees of the Sanitary District of Decatur*, 233 Ill. App. 3d 606, 615 (1992).

■ Our review of the covenant not to compete leads us to conclude that the parties intended it to take effect when the Finkels purchased Liberty Cleaners. The covenant provides in part:

> "The parties recognize that the buyer, in acquiring and purchasing the business, is acquiring and taking over the good will connected with such trade and business. In order to protect the purchase of the property and business and the good will thereof, it is agreed that the sellers will not, individually or collectively or in conjunction with others, for a period of three (3) years, engage in the dry cleaning business, either directly or indirectly in the City of Zion or within a radius of five (5) miles."

Thus, the parties denoted themselves as "buyer" and "seller" and

described the transaction between them as a "purchase of the property." Because it is presumed that the parties purposely inserted these terms (see *Kerton*, 262 Ill. App. 3d at 77), we conclude that the parties intended the covenant to take effect when the Finkels purchased the business. If, as the Lempas argue, the parties intended the covenant to take effect when the Finkels leased the business, they could have denoted themselves as "lessee" and "lessor," rather than "buyer" and "seller," and described the transaction between them as a "lease of the property," rather than "a purchase of the property."

Furthermore, even if we construe the covenant in light of the other documents executed on August 31, 1990, we would still conclude that it took effect when the Finkels purchased Liberty Cleaners. Like the covenant not to compete, the option to purchase uses the terms "buyer," "seller," and "purchase." By contrast, the building lease and business lease use the terms "lessor," "lessee," and "lease." By using identical terms in the covenant and the option to purchase, particularly where they used different terms in the building lease and business lease, the parties expressed their intent to have the covenant take effect when the Finkels purchased the business. See *Johnson v. Servicemaster Industries, Inc.*, 254 Ill. App. 3d 353, 362 (1992) ("It is the general rule that words used in one sense in one part of a contract are deemed to have been used in the same sense in another part of the contract where there is nothing in the context to indicate otherwise").

Moreover, the conclusion we reach today does not defy "common sense," as the Lempas argue. The parties could have reasonably believed that the Finkels had no need for the protection afforded by the covenant while they leased the business from the Lempas. Under the building lease and business lease, the Finkels had the option to renew either lease after five years. Thus, the parties could have reasonably believed that the Lempas would not compete with Liberty Cleaners while the Finkels leased that business and the building it was located in since competition from the Lempas would have given the Finkels an incentive not to renew the leases.

In conclusion, the language of the covenant, read by itself or in light of the building lease, business lease, and option to purchase, evidences the parties' intent that the covenant would take effect when the Finkels purchased Liberty Cleaners. The trial court found that the purchase was consummated on July 15, 1991, the date the Lempas delivered the bill of sale to the Finkels, rather than January 18, 1991, the date the Finkels exercised their option to purchase the business, or May 22, 1991, the date the parties executed the mortgage note. Because we have no persuasive reason to disturb this finding,

we conclude that the trial court did not err in awarding damages based on the breach of the covenant.

## B

■ The Lempas next argue that the Finkels waived their right to enforce the terms of the covenant not to compete when they stopped making payments toward the purchase of Liberty Cleaners. According to the Lempas, when the Finkels breached their obligation to make payments under the mortgage note, they no longer had to abide by the terms of the covenant.

We disagree. Whether a breach is substantial enough to discharge another's duty to perform is decided on general principles based upon the inherent justice of the matter. *Hanson v. Duffy*, 106 Ill. App. 3d 727, 732 (1982). In the present case, the Finkels apparently paid over $69,000 to the Lempas under the terms of the mortgage note before stopping payments. Under the narrow circumstances of this case, we believe that the Finkels' failure to make payments did not constitute a breach substantial enough to discharge the Lempas' duties under the covenant.

## III

■ The Lempas' third contention is that the trial court erred in failing to award interest on the amount due under the mortgage note. The trial court awarded the Lempas $27,924.36, apparently by multiplying the monthly amount due by the Finkels by the number of payments the Finkels had failed to make. The Lempas maintain that this method of calculation ignores that each monthly payment accounted for both the principal and interest due; because the monthly payments were not made, the principal amount due was never decreased. Accordingly, the Lempas reason, when interest is included on the amount of the principal due, the amount in default at the time the trial court entered its order was $29,288.

We disagree. A party seeking to recover has the burden to establish that he sustained damages and a reasonable basis for computation of those damages. *Keno & Sons Construction Co. v. La Salle National Bank*, 214 Ill. App. 3d 310, 312-13 (1991). Here, the Lempas did not supply the trial court, either at trial or in their post-trial motion, a reasonable basis for computing the additional interest they claim is owed. At trial, Mr. Lempa identified a document (which appears to be a computerized spreadsheet) which he claimed showed the principal and interest payments over the lifetime of the mortgage loan. However, the amount the Lempas claim is owed—$29,288—does not appear on the document, and the Lempas failed to present any evidence explaining what the figures on the document meant

and how they were calculated. Moreover, the document itself states that "[t]he following data is for information purposes only and the accuracy of the figures hereinafter set forth is not guaranteed." On the record before us, we cannot conclude that the Lempas provided the trial court a reasonable basis for computing the additional interest they claim is owed.

## CONCLUSION

For the foregoing reasons, we affirm in part the judgment of the circuit court of Lake County; we reverse that part of the judgment granting the Finkels $13,031.26 for relocation expenses and $51,000 for remodeling expenses on count I of their counterclaim.

Affirmed in part and reversed in part.

COLWELL and RATHJE, JJ., concur.