LINDA MAJCHER, Plaintiff-Appellee and Cross-Appellant, v. LAUREL MOTORS, INC., *et al.*, Defendants-Appellants and Cross-Appellees (Beverly Bank, Defendant-Appellee).

Second District Nos. 2—96—0656, 2—96—0664 cons.

Opinion filed April 28, 1997.

720

Kira E. Druyan and John M. Touhy, both of Mayer, Brown & Platt, of Chicago, for appellant Laurel Motors, Inc.

Charles M. Zimmerman, of Zimmerman, Smith & Kostelny, of Elgin, for appellant Diana M. Langer and Robert A. Langer.

Maureen H. Flaherty, of Lehrer, Flaherty & Canavan, of Wheaton, for appellee Linda Majcher.

Scott H. Reynolds, of Levenfeld, Eisenberg, Janger & Glassberg, of Chicago, for appellee Beverly Bank.

JUSTICE INGLIS delivered the opinion of the court:

The facts of this case arose when plaintiff, Linda Majcher, purchased a car with a tampered odometer from defendant Laurel Motors, Inc. (Laurel). Plaintiff subsequently sued Laurel as well as the previous owners, defendants Robert and Diana Langer (Langers), and the financing institution, defendant Beverly Bank (Bank). Following a jury trial at which Laurel was found liable to plaintiff for damages of $7,754.48 and attorney fees and costs of $44,807.41, and the Langers were found liable to plaintiff for damages of $12,000 and attorney fees and costs of $32,876.41, Laurel and the Langers appealed. Plaintiff cross-appealed from the judgment of the trial court finding her contingent fee agreement to be unlawful. We affirm as modified.

## BACKGROUND

The facts of this case, as opposed to the multitudinous legal arguments, are relatively straightforward. In August 1989, the Langers

purchased a used Cadillac in Arizona for between $7,500 and $8,000. At the time of purchase, the odometer read over 80,000 miles. The Langers testified that, as they drove their car back to Illinois, they noticed that the odometer ticked and ran in reverse.

On December 27, 1989, the Langers sold the car to Laurel for $9,995 as a trade-in for the purchase of another vehicle. The Langers signed an odometer disclosure statement certifying that the odometer reading of 35,011 miles was accurate. Conflicting testimony was presented on this point. The Langers testified that they told Laurel that the odometer had been rolling back during their drive from Arizona; Laurel averred that it had no knowledge of the low odometer reading.

Plaintiff purchased the vehicle from Laurel on January 6, 1990. At that time, Laurel signed another odometer disclosure statement certifying that the odometer reading of 35,093 miles was accurate. Plaintiff purchased the car for a total of $10,197. Laurel assigned the approximately $7,500 loan to the Bank, and plaintiff thereafter made her car payments to the Bank.

After purchasing the car, plaintiff began to experience some problems that were not covered by the warranty. She investigated the title history of the car and learned that the odometer had been altered. She then sued Laurel, the Langers, and the Bank, seeking damages under a variety of theories.

In counts I through VI of her amended complaint, plaintiff sought damages from Laurel for breach of express and implied warranty under the Magnusson-Moss Act (15 U.S.C.A. § 2301 *et seq.* (West 1982)) (counts I and II), revocation of acceptance of the contract (count III), consumer fraud (count IV), common-law fraud (count V), and violation of the federal Motor Vehicle Information and Cost Savings Act (15 U.S.C.A. § 1981 *et seq.* (West 1982)) (Federal Odometer Act) (count VI). Plaintiff sought damages from the Langers for violation of the Federal Odometer Act (count VII) and common-law fraud (count VIII). Finally, plaintiff sought to revoke the retail installment agreement against the Bank (count IX). Laurel filed a third-party action against the Langers under the Federal Odometer Act. The Bank cross-claimed against Laurel, seeking revocation of the auto loan. Plaintiff continued to drive the car after this case was filed for another 39,500 miles.

Approximately nine months before trial, Laurel offered to settle the case for $10,000. Plaintiff refused the offer.

On November 4, 1994, after a jury trial, the following verdicts were entered: (1) a general verdict for plaintiff against Laurel for $750; (2) verdicts for plaintiff against Robert Langer for $6,000 based

on statutory odometer fraud and $6,000 based on common-law fraud; (3) verdicts for plaintiff against Diana Langer for $6,000 based on statutory odometer fraud and $6,000 based on common-law fraud; and (4) a verdict for Laurel against the Langers for $6,000 based on statutory odometer fraud and $6,000 based on common-law fraud. Additionally, the court took plaintiff's consumer fraud claim (count IV) under advisement. The jury assessed no punitive damages in this matter.

On November 29, 1994, the trial court entered judgment for plaintiff and against Laurel based on plaintiff's consumer fraud claim, which rescinded plaintiff's purchase of the automobile and awarded plaintiff $7,754.58 in damages. The court further ordered the Bank to return to plaintiff the $5,154.78 she had paid on the auto loan and ordered Laurel to pay $9,483.93 to the Bank. The court also stated that if Laurel paid the amount to plaintiff, it would be in satisfaction of the judgment for the Bank and against Laurel.

Laurel filed a notice of appeal, but we dismissed the appeal on September 13, 1995, as premature because issues regarding attorney fees had not been settled in the trial court. Those issues were settled on January 18, 1996, when the trial court found that plaintiff's contingent fee agreement with her attorneys was unethical and violated the rules of professional conduct. Nevertheless, the court awarded plaintiff nearly $45,000 in attorney fees and costs against Laurel and nearly $33,000 in attorney fees and costs against the Langers pursuant to statute. Defendants' timely appeals followed.

## ANALYSIS

I. Laurel Appeal

Turning to the merits of the various appeals, we will first consider the issues raised by Laurel on appeal. Laurel raises, in essence, five issues on appeal: (1) whether the doctrine of election of remedies operates to void the judgment under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1994)); (2) whether Laurel could be restored to its position status quo *ante* by rescinding the contract; (3) whether plaintiff will receive duplicative rescissionary damages; (4) whether the judgment in favor of Laurel and against the Langers should be modified to award Laurel its total damages; and (5) whether attorney fees were properly awarded to plaintiff.

A. Election of Remedies

In its first issue on appeal, Laurel argues that the judgment under

the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 1994)) should be vacated under the election of remedies doctrine because plaintiff elected to receive actual damages under her common-law fraud claims. According to Laurel, plaintiff's choice to enter judgment on her fraud claims represents an affirmance of the contract which bars plaintiff from accepting rescissionary damages later. Laurel believes that the judgment on plaintiff's fraud claims entered on November 4, 1994, is separate from the judgment on plaintiff's Consumer Fraud Act claims entered on November 29, 1994. Laurel further contends that the November 4 judgment represents actual damages in affirmance of the contract and that the November 29 judgment represents rescissionary damages in disaffirmance of the contract. Accordingly, Laurel contends that the election of remedies doctrine bars plaintiff from collecting damages on both judgments. While we acknowledge that plaintiff may not receive a double recovery, we disagree with Laurel's contentions.

■ We first provide an overview of the doctrine of election of remedies.

"The doctrine of election of remedies is applicable where a party has elected inconsistent remedies for the same injury or cause of action. [Citations.] The prosecution of one remedial right to judgment or decree constitutes an election barring subsequent prosecution of inconsistent remedial rights. [Citations.] For instance, a remedy based on the affirmance of a contract (*e.g.*, damages) is generally inconsistent with one based on the disaffirmance of the contract (*e.g.*, rescission). [Citations.] Thus, the election of either remedy is an abandonment of the other." *Lempa v. Finkel*, 278 Ill. App. 3d 417, 423-24 (1996).

Laurel's argument, that the order of November 29, 1994, represents a separate and subsequent action to the order of November 4, 1994, simply misses the mark.

■ The order of November 4, 1994, stated that the trial court took "the cause of action brought by [plaintiff] against [Laurel] pursuant to the Illinois Consumer Fraud Act" under advisement. The November 29, 1994, order renders the trial court's judgment arising from the trial which concluded on November 4, 1994. The November 29, 1994, order does not, therefore, represent a "subsequent prosecution of inconsistent remedial rights" (*Lempa*, 278 Ill. App. 3d at 424); rather, the order is simply the final resolution of the combined bench and jury trial begun earlier. Thus, there is no subsequent prosecution of an inconsistent remedial right. Accordingly, for this reason, the doctrine of election of remedies is not applicable to the case before us.

The cases relied upon by Laurel are distinguishable. Laurel offers *Lempa* as the latest case stating the well-settled proposition that the "prosecution of one remedial right to judgment or decree constitutes an election barring subsequent prosecution of inconsistent remedial rights." *Lempa*, 278 Ill. App. 3d at 424. While this is an accurate statement of the law, the particular facts of *Lempa* do not provide support for its application to the facts of our case. In *Lempa*, a previous action rescinded a building lease between the parties. Four months later another action was instituted in which the former leaseholder sought to recover damages for breach of the lease. *Lempa*, 278 Ill. App. 3d at 421. The court concluded that the action sought relief based on the breach of the rescinded lease and that the damages were compensatory not rescissionary. The second action was therefore precluded by the doctrine of election of remedies. *Lempa*, 278 Ill. App. 3d at 427. Here, there is no "subsequent prosecution" of an inconsistent action, nor is there a prior award of inconsistent damages. Thus, *Lempa*, and its progenitors, are inapposite.

Laurel next asserts that the general verdict for $750 and the verdicts against the Langers are damages in affirmance of the contract and that the consumer fraud verdict for $7,754.48 is for rescissionary damages. According to Laurel, these are inconsistent and barred by the election of remedies doctrine. We disagree.

■ Plaintiff asserts that she sought rescission of the contract in all of the counts of her amended complaint. While not strictly true, we note that the $750 verdict was a general verdict covering plaintiff's fraud, revocation, and implied warranty claims. "The return of a general verdict creates a presumption that all issues of fact upon which proof was offered were found in favor of the prevailing party." *Klingler Farms, Inc. v. Effingham Equity, Inc.*, 171 Ill. App. 3d 567, 572 (1988). We cannot say that the jury rejected one or more of plaintiff's claims in rendering its general verdict. Moreover, we are unpersuaded by Laurel's analysis that the amount of the general verdict is unrelated to the damages for revocation of acceptance as the amount of the verdict is within the discretion of the jury. *Urban v. Zeigler*, 261 Ill. App. 3d 1099, 1102 (1994). Additionally, we note that no challenge to the propriety of the amount of the general verdict has been raised.

Laurel's resort to the verdict against the Langers is similarly unpersuasive. The jury found the Langers liable for $6,000 on plaintiff's common-law fraud claim. The amount of a verdict is within the jury's discretion, and we will not indulge in speculation about the jury's

intent in choosing this amount. Accordingly, we cannot say that the verdicts in this case are inconsistent.

### B. Status Quo

Laurel's second issue on appeal is that the rescission of the purchase contract failed to restore it to the position it occupied before the contract. Specifically, Laurel contends that it was entitled to the car if it had to refund plaintiff's purchase price. Laurel asserts, however, that plaintiff continued to drive the car until it was worthless, and the return of the car cannot restore it to its position before the contract. Laurel thus argues that it is entitled either to vacate the rescission award or to modify it to reflect the benefit plaintiff derived from her continued use of the car.

■ The remedy of rescission requires the cancellation of the contract and the restoration of the parties to their status before contracting. *Felde v. Chrysler Credit Corp.*, 219 Ill. App. 3d 530, 542 (1991). Not only must any consideration or property received by the rescinding party be returned, but the rescinding party must also account for any benefits it received from the other party under the contract. *Puskar v. Hughes*, 179 Ill. App. 3d 522, 528 (1989).

■ Laurel's argument boils down to a contention that it is due a setoff for the benefit plaintiff derived from driving the car nearly 39,500 miles after she purchased it. Laurel contends that, while it had to return plaintiff's payments on the car, the trial court erred by failing to award it a setoff for the benefit plaintiff enjoyed from driving the car. We disagree.

The trial court specifically found that "[t]here was no proof as to the value of the mileage driven." Indeed, plaintiff testified that the car ran terribly from the time she purchased it, was unsafe, and was frequently in need of repair. From this testimony, the trial court could reasonably conclude that the value to plaintiff was negligible. Accordingly, we find no abuse of discretion in the trial court's decision not to award a setoff.

Laurel asserts that the value of the benefit to plaintiff was the 19 payments she made on the contract. Laurel argues that, during the period in which plaintiff continued to drive the car, she continued to make payments, discontinuing the payments in October 1991, when the car stopped running. Accordingly, Laurel contends that its damages should be reduced by the value of those 19 payments, or $4,897.06. Again, we disagree.

Rescission was granted under plaintiff's statutory consumer fraud action. This action was tried to the court in a bench trial proceeding simultaneously with the jury trial. Accordingly, the trial court was

the finder of fact. In deciding what value to attach to the mileage, the trial court could accept plaintiff's testimony about how the car performed and her aggravation and inconvenience. Additionally, the court noted that there was no testimony offered concerning the value of the mileage. The court's decision not to award a setoff is not against the manifest weight of the evidence and accordingly will not be disturbed on review.

C. Duplication of Damages

Laurel's next issue on appeal is whether the trial court has awarded plaintiff duplicative damages. Laurel argues that the damages awards, specifically the rescissionary awards, must be modified to avoid giving a windfall to plaintiff.

■ On November 29, 1994, the trial court entered a series of judgments. It first entered a judgment for plaintiff and against Laurel in the amount of $7,754.48, representing a down payment of $2,600 made to Laurel and payments of $5,154.48 made by plaintiff to the Bank. The trial court also entered judgment for plaintiff against the Bank in the amount of $5,154.48, representing the payments plaintiff made to the Bank on her car loan. Additionally, the trial court's order provided that Laurel's satisfaction of the judgment it owed to plaintiff would satisfy the judgment of plaintiff against the Bank. The trial court also entered a judgment for the Bank against Laurel, pursuant to an agreement between the Bank and Laurel, in the amount of $9,483.93, representing the $5,154.48 plaintiff paid to the Bank and the $4,329.45 remaining outstanding on plaintiff's auto loan.

Laurel argues that the judgment orders of November 29, 1994, entitle plaintiff to receive only $7,754.48 in rescissionary damages. We agree. Laurel also asserts that it should not have to pay plaintiff $5,154.48 of the judgment against it because the Bank has already satisfied that portion of the judgment. We agree. All parties stipulated at oral argument that the Bank had satisfied the $5,154.48 judgment against it in favor of plaintiff. Thus, Laurel is entitled to a setoff for that amount and need pay plaintiff only $2,600 in order to satisfy plaintiff's judgment against Laurel.

■ Laurel also appears to contend that it should not be liable for the judgment entered in favor of the Bank and against Laurel. We disagree.

The Bank's judgment against Laurel was the product of an agreement between the Bank and Laurel. Such an agreed order is "conclusive on the parties and can be amended or set aside by one of the parties only upon a showing that the order resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties,

gross disparity in the position or capacity of the parties, or newly discovered evidence." *In re Haber*, 99 Ill. App. 3d 306, 309 (1981). Laurel has raised no objection to the agreed judgment order between it and the Bank below, nor does it raise any of the above-enumerated grounds on appeal. Accordingly, we will not disturb the judgment of the trial court. Thus, Laurel is to satisfy plaintiff's judgment for rescission, and Laurel must honor its agreement to indemnify the Bank for the funds of the auto loan it had contracted to receive.

D. Modification of Judgment for Laurel against Langers

This section is nonpublishable pursuant to Supreme Court Rule 23.

E. Attorney Fees

Laurel's final issue on appeal is whether the trial court properly awarded attorney fees. At the outset, we note that Laurel's argument is directed solely toward the award of attorney fees to plaintiff. Additionally, Laurel made no objection to the award of attorney fees to the Bank before the trial court. Accordingly, we deem this issue waived with respect to the Bank.

Laurel initially argues that the trial court abused its discretion by awarding attorney fees to plaintiff. Section 10a(c) of the Consumer Fraud Act provides that the trial court may award attorney fees to the prevailing party. 815 ILCS 505/10a(c) (West 1994). The decision whether attorney fees should be awarded to the prevailing party rests within the sound discretion of the trial court. *Ciampi v. Ogden Chrysler Plymouth, Inc.*, 262 Ill. App. 3d 94, 114 (1994). Among the factors the trial court will consider in deciding whether to award attorney fees are the degree of the opposing party's bad faith; the opposing party's ability to satisfy the fee award; the deterrent value of a fee award; whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal issue under the Consumer Fraud Act; and the relative merits of the parties' positions. *Graunke v. Elmhurst Chrysler Plymouth Volvo, Inc.*, 247 Ill. App. 3d 1015, 1022-23 (1993).

Laurel claims that it did not act in bad faith in selling plaintiff a vehicle with a tampered odometer. Laurel further blames the Langers for defrauding it, contending its reliance on the Langers' representations was reasonable and justifiable. Because bad faith is often a controlling factor in the determination to award attorney fees (see *Graunke*, 247 Ill. App. 3d at 1023), according to Laurel, its lack of bad faith should have precluded an award of attorney fees to plaintiff. Laurel also argues that "innocently misrepresent[ing] the odometer reading" can never be deterred by awarding attorney fees and that all the other *Graunke* factors are either not present or in Laurel's favor. Laurel's claim has no merit.

Contrary to Laurel's representations, the trial court found that plaintiff had presented credible evidence "that the digits on the odometer were not properly aligned and the car showed a great deal of wear" leading to the conclusion that "a reasonable inspection by Laurel *** should have alerted it to the malfunctioning odometer." Or, in other words, Laurel essentially closed its eyes to the true condition of the car in making its statements to plaintiff regarding the mileage of the car. We fail to see how Laurel can possibly characterize its actions as being in "good faith." Additionally, the court specifically noted that "since odometer fraud is a recurring problem within this country, hopefully the award of attorney[ ] fees will deter such conduct in the future." Thus, we find no abuse of discretion in the court's findings under *Graunke*.

Even if Laurel's actions can somehow be said to have been conducted with good faith, the Consumer Fraud Act does not require bad faith as a prerequisite to an award of attorney fees. *Grove v. Huffman*, 262 Ill. App. 3d 531, 539 (1994) ("Section 10a(c) of the Act applies to cases involving innocent misrepresentations"); *Haskell v. Blumthal*, 204 Ill. App. 3d 596, 602 (1990) ("attorney fees may, at times, be awarded plaintiffs without bad faith on the part of defendants"). We hold, therefore, that the trial court did not abuse its discretion in awarding plaintiff attorney fees.

■ Laurel next contends that the contingent fee agreement executed between plaintiff and her counsel was unethical and, therefore, should preclude the award of attorney fees to plaintiff. Laurel fails, however, to provide any authority to support its argument, in violation of Supreme Court Rule 341(e)(7) (155 Ill. 2d R. 341(e)(7)). "Arguments made without citation of supporting authority are deemed waived on appeal. [Citation.] The party who thus waives the question is bound by his waiver, but the court, which has the responsibility of reaching a just decision, is not so bound." *In re Marriage of Winters*, 160 Ill. App. 3d 277, 281 (1987). Accordingly, we address this issue.

■ Laurel contends that the trial court's ruling that plaintiff's fee agreement with her counsel created a proprietary interest in the lawsuit in violation of Rule 1.8 of the Rules of Professional Conduct (134 Ill. 2d R. 1.8) should preclude the award of attorney fees because of the conflict of interest such a fee agreement causes. We note that we do not reach the issue of whether the fee agreement creates a proprietary interest in the litigation as the attorney fees were properly allowed even if there is a proprietary interest. We agree with the trial court that the defendants were not "the intended beneficiaries of Rule 1.8." See *Topps v. Pratt & Callis, P.C.*, 206 Ill. App. 3d 298, 301 (1990) (harm from unethical agreement was "to the administra-

tion of justice and society at large because of the breach of the Code of Professional Responsibility"). Moreover, the infirmities of the fee agreement are more properly resolved by an action between plaintiff and her counsel and are not the concern of Laurel.

We also note that Laurel, as well as plaintiff in responding to Laurel's argument, has properly placed the fee agreement before us for consideration. The agreement states, in part:

> "The Undersigned Client agrees to pay said attorneys a sum equal to $33^1/_3\%$ (percent) of all amounts collected or otherwise recovered. *** It is also agreed that any attorneys [*sic*] fees awarded by the Court against the defendant, are in addition to the fees payable by client, and are outside this contact and will go directly to [counsel]."

The above-quoted clauses of the fee agreement are mutually exclusive. Plaintiff's counsel cannot collect both its contingent fee as well as an hourly fee. To do so would be to collect a double payment—something which this court, and the Rules of Professional Conduct, will not countenance.

Additionally, we note that plaintiff's counsel applied for, and received, statutory attorney fees at a reasonable hourly rate (which presumptively includes a reasonable profit margin) that fully compensates counsel for the time spent on the resolution of this matter. The purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims. In light of that purpose, we will not allow counsel to collect the contingent fee as well as its reasonable hourly fee because this would work to the detriment of the plaintiff. Accordingly, we hold that under the fee agreement plaintiff's counsel is entitled to the statutory attorney fees awarded by the trial court and no more. Plaintiff is entitled to the full amount of the judgments entered in her favor.

Laurel's final contention is that its settlement offer should act to limit the amount of attorney fees that may be awarded. Laurel argues that it offered plaintiff $10,000 to settle the case on January 28, 1994, which was later rejected by plaintiff. Laurel asserts that plaintiff's judgment was less than the settlement offer, prompting Laurel to conclude that any award of attorney fees must be limited to those fees incurred before January 28, 1994, the date of its settlement offer. The trial court rejected Laurel's argument, holding that the word "judgment" in the Consumer Fraud Act (815 ILCS 505/10a(f) (West 1994)) must "include the monetary amount of costs and attorney[ ] fees awarded." We agree with the trial court.

█ The fee-shifting portion of the Consumer Fraud Act provides, in pertinent part:

"At any time more than 30 days before the commencement of trial, a party, who is a new vehicle dealer or used vehicle dealer *** and who is defending a claim under this Act, may serve upon the party seeking relief under this Act an offer to allow judgment to be taken against the defending party to the effect specified in the offer with costs then accrued. *** When a party seeking relief under this Act does not accept an offer *** and when that party fails to obtain a judgment in an amount more than the total offer of settlement, that party shall forfeit and the court may not award any compensation for attorney's fees and costs incurred after the date of the offer." 815 ILCS 505/10a(f) (West 1994).

Laurel contends that "[s]tatutes in derogation of the common law prohibition of attorney-fee awards to prevailing parties must be strictly construed." *Greenview Ag Center, Inc. v. Yetter Manufacturing Co.*, 246 Ill. App. 3d 132, 140 (1993). Thus, according to Laurel, interpreting the word "judgment" to include attorney fees would violate this rule. Accordingly, Laurel believes that attorney fees cannot be included in order to determine whether a judgment exceeds a settlement offer.

Laurel overlooks the fact that the legislature has mandated that the Consumer Fraud Act "shall be liberally construed to effect the purposes thereof." 815 ILCS 505/11a (West 1994). "[O]ne of the purposes of allowing attorney fees to be awarded under section 10a(c) [of the Consumer Fraud Act] to prevailing parties is to encourage consumers to bring actions to vindicate their rights under the Act. [Citation.] Without such a provision, it would be difficult for injured consumers to obtain counsel in light of the sums of money that are in dispute in most consumer fraud litigation." *Totz v. Continental Du Page Acura*, 236 Ill. App. 3d 891, 910 (1992).

We must, therefore, construe the term "judgment" to include attorney fees. This conclusion is further bolstered by the fact that the judgment in this case was not final until the petition for attorney fees had been ruled upon. *Cf. Cashmore v. Builders Square, Inc.*, 207 Ill. App. 3d 267 (1990) (order dismissing complaint with prejudice not final and appealable until ruling on timely filed petition for sanctions is made). Accordingly, we do not find that the court abused its discretion in determining the amount of the fee award.

## II. Langer Appeal

We next consider the issues raised by the Langers on appeal. The Langers raise six issues on appeal: (1) whether the trial court erred by granting plaintiff summary judgment on her Federal Odometer Act count; (2) whether the jury was properly instructed about the

burden of proof and measure of damages for plaintiff's common-law fraud count; (3) whether damages under the Federal Odometer Act should have been joint and several and not individual to the Langers; (4) whether the common-law fraud damages should have been remitted to $2,000; (5) whether the damages on Laurel's counterclaim should have been remitted to $750; and (6) whether plaintiff should have been awarded attorney fees.

### A. Summary Judgment

In their first issue on appeal, the Langers contend that the trial court erroneously granted summary judgment in favor of plaintiff on the issue of liability under the Federal Odometer Act. The Langers assert that there was a genuine issue of material fact concerning the issue of their intent to defraud. They argue that the fact that they submitted to the Illinois Secretary of State an Arizona title indicating that the odometer reading of the car may not have been accurate undercuts the trial court's conclusion that they intended to defraud under the Federal Odometer Act. We disagree.

■ Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994); *Leschinski v. Forest City Steel Erectors*, 243 Ill. App. 3d 124, 127 (1993). In ruling on the motion, the court is required to construe all evidentiary material strictly against the movant and liberally in favor of the respondent. *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 908 (1994).

The propriety of an order granting summary judgment is a question of law, and, as such, we review such orders *de novo. Pagano*, 257 Ill. App. 3d at 909. If, after reviewing the pleadings and evidentiary material before the trial court, the reviewing court determines that a material issue of fact exists or that the summary judgment was based on an erroneous interpretation of the law, then reversal is warranted. *Pagano*, 257 Ill. App. 3d at 909.

■ Our review of the evidence that existed at the time the motion for summary judgment was pending convinces us that the trial court correctly granted summary judgment. The Federal Odometer Act imposes liability on "[a]ny person who, with intent to defraud, violates any requirement" of the statute. 15 U.S.C.A. § 1989(a) (West 1982). The transferor's intent to defraud "may be inferred from a showing of gross negligence or of a reckless disregard of facts indicating the vehicle's odometer is incorrect." *Hall v. Riverside Lincoln Mercury—Sales, Inc.*, 148 Ill. App. 3d 715, 720 (1986).

It is undisputed that the Langers knew that the odometer reading was in error. It is likewise undisputed that the Langers transferred their Illinois title to Laurel, signing the odometer certification which listed the odometer reading at 35,011. The Langers did not indicate that the reading might have been inaccurate in the space provided. From these facts, the trial court properly concluded that the Langers, at best, recklessly disregarded the erroneous odometer reading in certifying its accuracy. We hold, therefore, that the trial court properly granted summary judgment on the odometer fraud count.

The Langers contend that *Walt Bennett Ford, Inc. v. Goyne*, 969 F.2d 603 (8th Cir. 1992), undercuts the trial court's finding of intent under the odometer fraud count. There, the court held that the dealer, Walt Bennett Ford, was equitably estopped from prosecuting an odometer fraud action because the seller had disclosed that the odometer reading was not accurate and thus lacked the requisite intent to defraud. *Walt Bennett Ford*, 969 F.2d at 604-05. Similarly, the Langers assert that their disclosure of the inaccuracy of the odometer to Laurel, as well as the Secretary of State, indicates that they did not possess the intent to defraud under the statute. We remain unpersuaded. Whether the Langers may have questioned the accuracy of the odometer statement to Laurel does not contradict the fact that the Langers certified the odometer reading to be 35,011 when they assigned their title to Laurel and did not indicate that the odometer reading was inaccurate. *Walt Bennett Ford* is simply inapposite to the facts of this case. Accordingly, summary judgment on the issue of liability under the Federal Odometer Act was appropriate.

### B. Jury Instructions

The Langers' next issue on appeal is whether the jury was properly instructed concerning the burden of proof and the measure of damages in plaintiff's common-law fraud claim against them. We first consider the Langers' contentions regarding the burden of proof instructions.

### 1. Burden of Proof

This issue is nonpublishable under Supreme Court Rule 23.

### 2. Measure of Damages

The Langers next dispute the jury instruction given on the measure of damages. It stated, in pertinent part, that plaintiff was to be compensated for "[a]ll amounts paid on the automobile." See Illinois

Pattern Jury Instructions, Civil, No. 30.01 (3d ed. 1989). The Langers contend that the trial court erred by giving plaintiff's instruction. Moreover, the Langers assert that the proper measure of damages is "the difference between the actual value of the property sold and the value the property would have had if the representations had been true" (*Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 196 (1989)), and that the trial court erred by refusing to give defendants Langers' jury instruction No. 1.

 Jury instructions provide jurors with the correct principles of law applicable to the evidence which has been submitted to them. *Gaines v. Townsend*, 244 Ill. App. 3d 569, 576 (1993). The trial court has the discretion to decide which issues have been raised by the evidence and which instructions will be read to the jury. *Gaines*, 244 Ill. App. 3d at 576. On review, we will grant a new trial only where a party shows it has suffered serious prejudice to its right to a fair trial due to the trial court's failure to read a tendered jury instruction. *Gaines*, 244 Ill. App. 3d at 576.

 Here, the Langers do not argue that they have been prejudiced by the trial court's refusal of their tendered jury instruction No. 1. Moreover, we have examined the record and find the trial court did not abuse its discretion. The court stated that the rescissionary damages plaintiff sought under her fraud count against the Langers were allowed by *In re Estate of Neprozatis*, 62 Ill. App. 3d 563, 570 (1978). Further, the court stated that the measure of damages, return of consideration, was accurately stated by "all amounts paid on the automobile." We agree and, accordingly, hold that the trial court did not err in refusing the Langers' tendered jury instruction No. 1.

C. Joint and Several Liability

 In their next issue on appeal, the Langers contend that the trial court erroneously entered judgment on each of the odometer fraud verdicts returned against Robert and Diana individually. They assert that under the Federal Odometer Act liability is joint and several. They argue this means that the trial court should have modified the verdict to reflect their joint and several liability for $6,000, rather than the individual and separate liability of $6,000 for each of them.

Plaintiff responds by asserting that the trial court's judgment was proper. Plaintiff first analogizes the Langers' prayer for relief to a situation where one codefendant is seeking contribution from another. Plaintiff contends that, under the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1994)), joint and several liability is not allowed for intentional tortfeasors. Plaintiff argues that

the intent to defraud under the federal statute renders the Langers' actions an intentional tort. Accordingly, plaintiff concludes that the Langers should not be jointly and severally liable and that the court's judgment was correct.

Plaintiff also contends that the better reasoned of the federal odometer fraud decisions do not allow defendants to be jointly and severally liable. Thus, according to plaintiff, the trial court followed the correct reasoning in deciding to impose individual liability on Robert and Diana for each Langer's violation of the federal statute. We agree with plaintiff on this point.

The parties, as well as our own research, have uncovered no Illinois cases directly on point. We therefore turn to the federal cases which have considered the issue of whether liability under the Federal Odometer Act is joint and several. We find two competing lines of authority: the United States Court of Appeals for the Fourth Circuit concluded that the plain language of the statute imposed separate and individual liability upon defendants in *Ferris v. Haymore*, 967 F.2d 946, 955-56 (4th Cir. 1992); but the United States Court of Appeals for the Sixth Circuit held that the statute permitted joint and several liability in *Rice v. Gustavel*, 891 F.2d 594, 596 (6th Cir. 1989). We believe *Ferris* to be the better reasoned analysis and, accordingly, follow the lead of the fourth circuit in holding that the Langers are separately and individually liable for the judgment entered against them under the odometer fraud count.

*Ferris* arose from a suit against two auto dealerships in the chain of title of a car with a rolled-back odometer. In its analysis of whether to apply joint and several liability, the court initially considered the plain language of section 1989(a), stating that the statute "imposes treble damage liability on '*[a]ny* person who, with intent to defraud, violates any requirement imposed under this subchapter.' " (Emphasis in original.) *Ferris*, 967 F.2d at 955, quoting 15 U.S.C. § 1989(a) (1988). The court next criticized the premises of the sixth circuit's holding in *Rice*:

> "That court did not even purport to rest its decision *** on the terms of the statute. It simply stated that '[t]he fact that each such person shall be liable . . . does not *necessarily* preclude the conclusion that liability is to be joint and several, rather than separate and individual.' [*Rice*,] 891 F.2d at 596 (emphasis added). Then, without analysis, the court invoked the common law rule that '[l]iability for tortious conduct is normally joint and several' in holding that the federal odometer statute does not permit a plaintiff to recover the full measure of damages against each defendant. [*Rice*, 891 F.2d] at 597.

We do not believe that this holding can be reconciled with the plain terms of the odometer statute. \*\*\* The statute \*\*\* provides to victims of odometer fraud a cause of action against each violator of the statute [and] expressly provides that each violator will be liable for treble or statutory damages." *Ferris*, 967 F.2d at 956. The court further disagreed with the *Rice* court for importing the common-law principle of joint and several liability into this statutory section, noting that Congress was well able to explicitly provide for joint and several liability in various statutory schemes when it wished. *Ferris*, 967 F.2d at 956-57.

We acknowledge that the case at bar differs from *Ferris* in the important respect that there was not the successive fraudulent transfer of title from Robert to Diana. This does not, however, change our analysis. We note that Robert and Diana were each found to be individually liable for a violation of the Federal Odometer Act. This, therefore, renders the instant case indistinguishable from *Ferris*. Therefore, Robert and Diana are separately and individually liable for each one's violation of the Federal Odometer Act.

We also note that the Langers' arguments are untimely made. The Langers did not object to the verdict forms sent to the jury listing Robert and Diana separately under the odometer fraud count. A timely objection interposed at that time would have alleviated the Langers' present disappointment. Accordingly, we hold that the trial court did not err by imposing separate and individual liability upon each of the Langers.

### D. Remittitur of Fraud Damages to $2,000

The Langers next argue that the trial court should have provided in its order that the satisfaction of the odometer fraud judgment would also satisfy the common-law fraud judgment, because to allow recovery on both judgments would be to allow plaintiff to recover twice for a single harm. We note, however, that the Langers failed to raise this issue in their post-trial motion and have thus waived the issue for review. *Doe v. Lutz*, 281 Ill. App. 3d 630, 641 (1996). Nevertheless, we consider the issue, as waiver is a limitation on the parties and not the reviewing court. *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11 (1996).

The Langers' position is clearly correct. Plaintiff is able to cite no authority that would allow plaintiff to collect damages for both common-law fraud and statutory odometer fraud to remedy a single injury. Indeed, the authority cited by plaintiff supports the Langers' position. *Verdonck v. Scopes*, 226 Ill. App. 3d 484, 491-92 (1992) (the plaintiff may not recover both statutory odometer fraud and common-

law fraud damages, but instead is limited to the greater award of common-law fraud damages). Accordingly, pursuant to Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we modify the trial court's judgment order of November 4, 1994, to reflect that the satisfaction of the statutory odometer fraud judgments in favor of plaintiff and against each Langer individually will satisfy the common-law fraud judgments in favor of plaintiff and against the Langers.

E. Indemnification to Laurel
■ The Langers' next issue on appeal deals with the judgments entered against them on Laurel's counterclaim. They argue that the thrust of Laurel's counterclaim is for indemnification and is therefore barred under the statutory odometer fraud count. We agree.

In accord with our holding above that the Federal Odometer Act imposes separate and individual liability, we also hold that it bars contribution or indemnification between codefendants. See *Ferris*, 967 F.2d at 957-58 (reversing district court's reduction of award due to settlement of claims against codefendants); *Mataya v. Behm Motors Inc.*, 409 F. Supp. 65, 70 (E.D. Wis. 1976) ("[t]his phenomenon of separate and individual liability precludes recovery on a cross-claim based on indemnification or contribution"). Thus, Laurel should have been precluded from pressing its counterclaim against the Langers as it merely sought indemnification. Accordingly, we vacate the judgment in favor of Laurel and against the Langers under count II of Laurel's counterclaim for statutory odometer fraud.

F. Attorney Fees
■ The Langers' final issue on appeal concerns the propriety of the trial court's award of attorney fees to plaintiff. The Langers first contend that the trial court was without jurisdiction to entertain plaintiff's fee petition. The Langers assert that the fee petition, filed on February 2, 1995, was filed more than 30 days after the final judgment, the date of which the Langers claim to have been November 4, 1994, the date the jury verdicts were returned.

The Langers' argument is patently frivolous and baseless in the record. The record plainly shows that the trial court ruled on the Langers' post-trial motion on January 17, 1995. The trial court further ordered that "plaintiff shall have 21 days to file a petition for attorney fees." Plaintiff timely filed her petition for attorney fees on February 2, 1995, 16 days after the entry of final judgment. We thus reject the Langers' first contention.
■ The Langers next contend that the trial court should not have granted plaintiff's request for attorney fees because plaintiff

failed to distinguish the time spent on each count of the complaint. We disagree.

The trial court found that the hourly rates charged by plaintiff's attorneys were reasonable and that the times spent on the various tasks were appropriate. Our review of the record reveals no objection by the Langers either to the rates charged, the times spent performing various tasks, or the necessity of any of the specific tasks performed by plaintiff's attorneys. Moreover, the trial court found that all the claims were inextricably intertwined, and the Langers did not dispute this finding. Accordingly, we find no error in the trial court's award. We point out, too, that the trial court adjusted the award to reflect the time spent on the claim against the Langers by limiting the award to fees incurred up until the summary judgment against the Langers.

### III. Plaintiff's Cross-Appeal

■■ On cross-appeal, plaintiff objects to the trial court's finding that the fee agreement was in violation of the Rules of Professional Conduct and that it created a proprietary interest in the litigation. After careful review, however, we conclude that plaintiff lacks standing to challenge the trial court's finding that her counsel committed an ethical violation. *Northern Trust Co. v. Brentwood North Nursing & Rehabilitation Center, Inc.*, 225 Ill. App. 3d 1039, 1041 (1992) ("plaintiff does not have standing to raise arguments relating to the detriment suffered by its attorneys from the order because [attorneys] did not file a notice of appeal"). We note that this finding does not mean that plaintiff may not challenge her counsel regarding the propriety of the fee agreement in another forum.

### IV. Bank's Motion to Dismiss

■■ The Bank filed a motion to dismiss Laurel's appeal as it related to the Bank which we ordered taken with the case. The arguments advanced in that motion were substantially similar to those raised in its brief on appeal. Accordingly, we choose to deny the Bank's motion and resolve its arguments in the context of this appeal.

## CONCLUSION

In summary, then, we affirm the judgment of the trial court as regards Laurel in all respects. We also affirm the trial court's judgment as regards the Langers in all respects with the following modifications: satisfaction of the statutory odometer fraud judgments against each Langer individually will satisfy the common-law fraud

judgments in favor of plaintiff and against the Langers, and we vacate the judgment in favor of Laurel and against the Langers under count II of Laurel's counterclaim for statutory odometer fraud. Thus, Laurel must pay $2,600 ($7,754.48 less $5,154.48) in satisfaction of the judgment in favor of plaintiff against Laurel; and Laurel must pay $9,483.93 in satisfaction of the judgment for the Bank against Laurel. The Bank, by stipulation of all parties, has already satisfied the $5,154.48 judgment in favor of plaintiff against the Bank. Robert Langer must satisfy the $6,000 judgment in favor of plaintiff and against him for violation of the Federal Odometer Act; all remaining judgments against him are vacated. Diana Langer must satisfy the $6,000 judgment in favor of plaintiff and against her for violation of the Federal Odometer Act; all remaining judgments against her are vacated. For the foregoing reason, the judgment of the circuit court of Du Page County is affirmed as modified.

Affirmed as modified.

BOWMAN and RATHJE, JJ., concur.