142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Cedric M. RICHESON and Emily Richeson, Plaintiffs-Appellants,
v.
Christopher S. SALTZMAN, Defendant-Appellee.
 No. 97-3450.
 United States Court of Appeals,
Seventh Circuit.
 .
Submitted Mar. 26, 1998*.
Decided Mar. 27, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 96 C 5448 William Hart, Judge.
 Before Hon. JOEL M. FLAUM, Hon. MICHAEL S. KANNE, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Cedric and Emily Richeson filed an adversary complaint in Christopher Saltzman's Chapter 7 bankruptcy action regarding certain payments they made to Saltzman in connection with home improvement work he was to perform on their house. The Richesons alleged that these payments were induced by Saltzman's false representations and constituted nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A). Under § 523(a)(2)(A), an individual's debt obtained by "[f]alse pretenses, a false representation, or actual fraud" is not dischargeable in bankruptcy. The bankruptcy court held that the payments of which the Richesons complained were induced by Saltzman's fraudulent misrepresentations and that $35,442.22 of the complained-of payments represented nondischargeable debt. The district court determined that the Richesons failed to prove that they suffered any damage as a result of three of the payments and held that only $14,713.39 of the debt was nondischargeable. The Richesons appeal from the district court's decision, and we affirm.
 
 I. Facts
 
 2
 In June 1993, the Richesons entered into a contract for substantial home improvements with Sea Bee Home Improvement Co. ("Sea Bee"). Saltzman was the officer, director, and sole shareholder of Sea Bee. Pursuant to the contract, the Richesons were to pay Sea Bee an initial deposit, and then make additional payments upon completion of various phases of the project. It was undisputed at trial that the Richesons paid Sea Bee the requisite initial deposit of $22,924. The Richesons subsequently made the following five payments, which they claim were induced by Saltzman's fraudulent misrepresentations and represent nondischargeable debt: (1) $15,000 on July 16, 1993 to Sea Bee, which Saltzman represented was needed for additional deposits and payments because he already had expended the initial deposit; (2) $5,000 on October 4, 1993 to Sea Bee, which Saltzman represented was for deposits on kitchen cabinets and additional windows; (3) $2,238.54 on October 14, 1993 to Pella Windows directly because Saltzman represented that he could not be present to pay Pella; (4) $5,000 on October 15, 1993 to Jatek, a subcontractor, because Saltzman again represented that he could not be present to pay Jatek; and (5) $10,000 on October 15, 1993 to Sea Bee, which Saltzman represented was needed for additional payments. Unbeknownst to the Richesons at the time, Sea Bee had closed its offices by the end of October 1993 and failed to complete the work under the contract. Sea Bee went into bankruptcy with no assets, and the Richesons attempted to pursue claims against Saltzman individually.
 
 
 3
 Saltzman filed for protection under Chapter 7 of the Bankruptcy Code, and the Richesons filed the underlying adversary complaint. Following a two-day trial regarding the adversary complaint, the bankruptcy court found that the five payments at issue were induced by Saltzman's fraudulent misrepresentations and that only $1,796.62 was used for the purposes that Saltzman represented. The court held that $35,442.22 was advanced in reliance on misrepresentations and constituted nondischargeable debt under § 523(a)(2)(A). Because the court found that Saltzman had made false representations to obtain the money, the court looked beyond the corporate form and held him personally liable. The court further determined that its finding of fraud under § 523(a)(2)(A) necessitated a finding of fraud under the Illinois Consumer Fraud Act, 815 ILCS 505/1-12. Nevertheless, the court declined to award the Richesons' attorney's fees, finding that they were not entitled to the award under the § 505/10a(c) of the Consumer Fraud Act. The court did not rule on the Richesons' claim for punitive damages.
 
 
 4
 Saltzman appealed the bankruptcy court's decision to the district court, and the Richesons cross-appealed both the denial of attorney's fees and the bankruptcy court's failure to consider their punitive damages claim. The district court determined that the Richesons suffered no damages as a result of making the $15,000 July 16 payment, the $2,238.54 October 14 payment, and the $5,000 October 15 payment. The district court therefore held that these three payments represented dischargeable debt under § 523(a)(2)(A) and reversed the bankruptcy court's holding with respect to those payments. The district court, however, agreed with the bankruptcy court that the $5,000 October 4 payment and the $10,000 October 15 payment were induced by fraud and constituted nondischargeable debt. The court held that Sea Bee used $286.62 of these payments for the purpose that Saltzman represented, resulting in a total of $14,713.38 nondischargeable debt. The court also affirmed the finding that Saltzman committed fraud under the Illinois Consumer Fraud Act, affirmed the denial of attorney's fees, and declined to remand for consideration of punitive damages.
 
 II. Analysis
 
 5
 As an initial matter, we note that Saltzman's pro se brief on appeal does not comply with the requirements of Federal Rule of Appellate Procedure 28(b) and Circuit Rule 28. Saltzman generally refers us to the record established in the courts below and to the briefs his attorney submitted in the district court. This practice raises several difficulties and has been strongly discouraged by this court. First, an appellate brief may not incorporate by reference briefs previously submitted at the district court level. See Fleming v. County of Kane, Illinois, 855 F.2d 496, 498 (7th Cir.1988). Second, even if the briefs presented to the district court are considered as extensions of Saltzman's appellate brief, these other briefs do not address the arguments before this court. "This practice also 'unnecessarily confuses and diffuses the issues presented,' because of the changes in the nature of the issues that inevitably occur between trial and appeal." Id. (quoting Prudential Ins. Co. of America v. Sipula, 776 F.2d 157, 161 (7th Cir.1985)).
 
 
 6
 This court, like the district court, reviews the bankruptcy court's legal conclusions de novo and its factual findings for clear error Matter of Lifschultz Fast Freight, 132 F.3d 339, 343 (7th Cir.1997); Meyer v. Rigdon, 36 F.3d 1375, 1378 (7th Cir.1994). "Our review of the relevant facts extends not to the district court's decision, but to the findings of fact made by the bankruptcy court itself." Matter of Bonnett, 895 F.2d 1155, 1157 (7th Cir.1989).
 
 
 7
 Creditors bear the burden of proving by a preponderance of the evidence that a debt is nondischargeable, and exceptions to discharge are construed strictly against the creditors. Matter of Bero, 110 F.3d 462, 465 (7th Cir.1997), Matter of Scarlata, 979 F.2d 521, 524 (7th Cir.1992). As the bankruptcy court's opinion sets forth, to have a debt deemed nondischargeable under § 523(a)(2)(A), the Richesons had to establish the following elements: (1) that Saltzman incurred the debt through fraud, (2) that Saltzman intended to deceive the Richesons; and (3) that the Richesons justifiably relied on Saltzman's representations to their detriment. Field v. Mans, 516 U.S. 59, 70, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); Mayer v. Spanel Int'l, Ltd., 51 F.3d 670, 673 (7th Cir.1995).
 
 
 8
 The Richesons argue that the district court erred in requiring them to show they suffered damages as a result of relying on Saltzman's misrepresentations. However, detrimental reliance is an essential element of § 523(a)(2)(A). See In re Gergely, 110 F.3d 1448, 1453 (9th Cir.1997); In re Arlington, 192 B.R. 494, 498 (Bankr.N.D.Ill.1996). Section 523(a)(2)(A) incorporates the established elements of common-law fraud and detrimental reliance is an essential element of common-law fraud. See Field, 516 U.S. at 70, Restatement (Second) of Torts § 525 (1976).
 
 A. July 16 $15,000 Payment
 
 9
 On July 16, the Richesons paid $15,000 to Sea Bee based on Saltzman's representation that he needed the money for additional deposits and payments because he already had expended the initial deposit. The bankruptcy court, however, found that Saltzman had spent only $4,570.17 of the Richesons' initial deposit of $22,924.00 at the time he requested the additional funds Based on this finding, the bankruptcy court held, and the district court assumed, that Saltzman induced the Richesons to make the $15,000 payment through a material misrepresentation and that the Richesons justifiably relied on the misrepresentation. There is ample evidence in the record to support these conclusions. The district court, however, held that the Richesons failed to show that they suffered damages as a result of making this payment. According to the contract, a $30,000 installment payment was due after the concrete was poured. The district court determined that the $15,000 payment could be considered an early partial payment towards the installment payment that was due under the contract after the concrete was poured. Relying on the bankruptcy court's finding that the concrete was poured by early October, the district court held that the $30,000 installment payment was due at that time. Because the Richesons had not presented any evidence that they were damaged by "early payment," the district court concluded that this debt did not qualify as nondischargeable.
 
 
 10
 The Richesons argue on appeal that whether they were required to make future installment payments is irrelevant to the finding of nondischargeability. Instead, they claim that the issue is whether "the fraud existed at the time of, and was the methodology by which, the money was obtained." However, the fact that a creditor entrusts a debtor with money to use for a specific purpose and the debtor has no intention of using it in that manner only establishes that the debtor made a misrepresentation. Matter of Sheridan, 57 F.3d 627, 635 (7th Cir.1995) (citing Matter of Pappas, 661 F.2d 82, 86 (7th Cir.1981)). Under § 523(a)(2)(A), the creditor also must establish detrimental reliance on the misrepresentation. Therefore, we consider whether the district court erred in finding that the $15,000 payment was simply an early payment that resulted in no damage to the Richesons.
 
 
 11
 The Richesons argue the district court's holding that the $15,000 would have been due in early October ignores "the unequivocal evidence" that Sea Bee failed to complete the pouring of the concrete, the contractual precondition to further payment. However, the bankruptcy court's determination that the concrete had been poured by October 4 is supported by substantial evidence in the record. The record even contains a February 8, 1994 letter from Mr. Richeson to Saltzman stating that the concrete was poured in late September, but indicating the Richesons' dissatisfaction with the work. The bankruptcy court found that "[t]he concrete had been poured by [on or about October 4], so pursuant to the Contract and the agreed-upon extras, the total due was $56,224." Because there is sufficient support in the record, the bankruptcy court did not abuse its discretion in making these factual findings, and the district court properly relied on these findings. "If the bankruptcy court's 'account of the evidence is plausible in light of the record viewed in its entirety,' we will not reverse its factual findings ...." Lifschultz, 132 F.3d at 343 (quoting Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).
 
 
 12
 After the concrete was poured, the Richesons owed a total of $56,224 under the contract. The bankruptcy court found that by October 4, the Richesons had paid a total of $61,224 (the initial deposit of $22,924; the July 16 payment of $15,000; a September 27 payment of $7,000; and an October 4 payment of $16,300), but both the bankruptcy and the district court held that $5,000 of total $61,224 constituted nondischargeable debt. Because the Richesons failed to satisfy their burden of proving that they were damaged by making the $15,000 payment two and one-half months before it was due, the district court did not err in finding that the $15,000 payment merely constituted a partial payment of the total amount due by October 4.
 
 B. Payments to Pella and Jatek
 
 13
 On October 14 and 15, Saltzman represented to the Richesons that he could not be present at the their home to pay $2,238.54 to Pella for windows that were being delivered and to pay $5,000 Jatek for its subcontracting services. The Richesons then paid Pella and Jatek directly, even though Sea Bee was required under the contract to pay for all goods and services. The bankruptcy court found that these payments constituted nondischargeable debt. The district court, however, found these particular debts dischargeable because the Richesons received full value of the payments from Pella and Jatek and suffered no damages.
 
 
 14
 The Richesons argue that the district court erred in finding that they did not justifiably rely to their detriment on Saltzman's misrepresentations. They argue that they were induced to make payments not required under the contract, and that if they not been induced to make these payments, they might have discovered earlier that "Saltzman was using their funds in an attempt to finance his business."
 
 
 15
 The district court did not err in finding that the substance of Saltzman's misrepresentation was not related to inducing the Richesons to make payments outside the contract. In inducing the Richesons to pay Pella and Jatek directly, Saltzman represented that he was not available to pay the subcontractors when they arrived to deliver goods or perform services. Saltzman stated that the subcontractors would not leave the goods or perform the services without receiving payment, resulting in a delay in the project. There is no evidence in the record that Saltzman represented that he would reimburse the Richesons and failed to do so. Further, there is no evidence in the record that the Richesons ever objected to making these payments directly to the subcontractors or attempted to receive reimbursement for the payments from Sea Bee.
 
 
 16
 Even though the Richesons proved that Saltzman misrepresented the actual reason why he was unable to pay the subcontractors (that he was unable to make the payments), the Richesons did not prove beyond the preponderance of the evidence that they detrimentally relied on the misrepresentation. Scarlata, 979 F.2d at 524. There is nothing in the record to indicate that Saltzman, whose Sea Bee checking account was overdrawn by $25,000, would have actually made the payments to the subcontractors. Arlmgton, 192 B.R. at 499-500. Although the Richesons may have been induced to make payments not required under the contract, they received materials and services from Pella and Jatek. Had the Richesons not made the payments directly to the subcontractors, they likely would not have received the Pella windows and Jatek would not have performed the subcontracting work at their house. As the district court reasonably concluded, "if the Richesons had not made the payment[s], the amount advanced on Sea Bee's behalf would have been less, but the value of the work performed at their house would also have been less ."
 
 C. Attorney's Fees
 
 17
 We also reject the Richesons' argument that the bankruptcy court and the district court considered improper criteria in denying them attorney's fees under the Illinois Consumer Fraud Act. Because the trial court is best situated to determine what costs and fees are reasonable, we review the denial of attorney's fees for an abuse of discretion. See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 525 (7th Cir.1995), cert. denied, 516 U.S. 1115, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996). There is sufficient evidence in the record to support the bankruptcy court's findings that the Richesons failed to satisfy each of the following considerations: that Saltzman's actions were not in bad faith; that he would be unlikely to be able to pay the award of attorney's fees; that the award would not have a deterrent effect on others; that the Richesons were not seeking to benefit all consumers or to resolve a significant legal issue under the Consumer Fraud Act, and that the relative merits of the parties' cases did not give the court cause to award attorney's fees to the Richesons. Majcher v. Laurel Motors, Inc., 287 Ill.App.3d 719, 223 Ill.Dec. 683, 680 N.E.2d 416, 424 (Ill.App.Ct.1997); First Chicago Gary-Wheaton Bank v. Gaughan, 275 Ill.App.3d 53, 211 Ill.Dec. 553, 655 N.E.2d 936, 943 (Ill.App.Ct.1995) (citations omitted). The Richesons argue that the bankruptcy court should have considered only two of these five factors. Because the court did not abuse its discretion in finding that the Richesons failed to meet each and every factor considered, this argument is without merit.
 
 D. Punitive Damages
 
 18
 Finally, the Richesons argue that the bankruptcy court erred in failing to determine whether they were entitled to punitive damages. We review de novo the bankruptcy court's failure to award punitive damages, "asking whether the evidence, when considered in the light most favorable to plaintiffs, is legally sufficient to satisfy Illinois' standard for an award of punitive damages." Jannotta v. Subway Sandwich Shops, Inc., 125 F.3d 503, 511 (7th Cir.1997). A plaintiff seeking to recover punitive damages for fraud under Illinois law must show more than mere deceit; a plaintiff must show "gross fraud, breach of trust, or 'other extraordinary or exceptional circumstances clearly showing malice and willfulness." ' Id. (quoting AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc., 896 F.2d 1035, 1043 (7th Cir.1990)).
 
 
 19
 Like the district court, we find the evidence in this case insufficient to establish "gross fraud" as a matter of law. As the bankruptcy court found, Saltzman's conduct was neither egregious nor indicative of malice. We therefore affirm the district court's refusal to remand the case to the bankruptcy court for further consideration of whether to award the Richesons punitive damages.
 
 
 20
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 After an examination of the briefs and record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed. R.App. P. 34(a); Cir. R. 34(f)